784 So.2d 862 (2001)
LOUISIANA SWABBING SERVICE, INC.,
v.
ENTERPRISE PRODUCTS COMPANY, Enterprise Transportation Company, and Nathaniel Eldridge, Jr.
No. 00-1161.
Court of Appeal of Louisiana, Third Circuit.
May 2, 2001.
*863 Robert R. McBride, McBride, Foret & Leonard, Lafayette, LA, Counsel for Plaintiff/Appellant, Louisiana Swabbing Service, Inc.
Richard J. Petre, Jr., Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, Counsel for Defendants/Appellees, Nathaniel Eldridge, Jr., Enterprise Products Company, d/b/a Enterprise Transportation Company.
Court comprised of THIBODEAUX, WOODARD, PETERS, AMY and PICKETT.
PETERS, J.
The plaintiff, Louisiana Swabbing Service, Inc. (Louisiana Swabbing), appeals a summary judgment granted to the defendants, Nathan Eldridge, Jr., and Enterprise Products Company (Enterprise), dismissing Louisiana Swabbing's attempt to recover from the defendants the increase in workers' compensation insurance premiums it incurred as a result of an automobile accident wherein four of its employees were injured. For the following reasons, we affirm the trial court's grant of the summary judgment.

DISCUSSION OF THE RECORD
Louisiana Swabbing is an oilfield workover company engaged in the maintenance of existing oil wells. On August 25, 1998, four of its employees were en route to a work site in a company-owned truck on Interstate 10 in Lafayette Parish, Louisiana. A tractor-trailer rig driven by Eldridge *864 and owned by Enterprise struck the rear of the vehicle occupied by the employees, seriously injuring all four. Louisiana Swabbing's insurer paid workers' compensation benefits and medical expenses to the four workers. Louisiana Swabbing filed suit against Eldridge and Enterprise to recover the property damage to its vehicle as well as the increased workers' compensation insurance premiums it incurred as a result of the accident.
The trial court granted the motion for summary judgment filed by Eldridge and Enterprise and dismissed with prejudice all claims by Louisiana Swabbing for damages related to the increase in workers' compensation insurance premiums. It then designated the judgment as a final appealable judgment pursuant to La.Code Civ.P. art. 968, and Louisiana Swabbing filed this appeal. However, thereafter, the parties settled all other aspects of the litigation, leaving only this issue to be determined.

OPINION
Appellate courts review summary judgments de novo under the same criteria applied by the trial court in determining whether summary judgment is appropriate. Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00); 758 So.2d 250. A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The facts are not at issue in this appeal, and the only question before us is whether Louisiana law allows a plaintiff to collect as damages from a tortfeasor his increase in workers' compensation insurance premiums arising from the tortfeasor's negligent injuring of the plaintiff's employee or employees. We evaluate this question under the fourth element of the duty-risk analysis, described as "the scope of liability or scope of protection element."[1]Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440, p. 7 (La.3/23/01); 782 So.2d 606, 611. In doing so, we must determine whether Eldridge's "substandard conduct was a legal cause of the plaintiff's injuries." Id. There is no rule for determining the scope of the duty, and the decision is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty." Roberts v. Benoit, 605 So.2d 1032, 1044 (La. 1991).
Under the duty-risk analysis, a plaintiff must establish each and every element by the requisite burden of proof to be successful. Thus, failure to establish any one of the elements is fatal to his right to recover. Because we find that Louisiana Swabbing cannot be successful in establishing the fourth element, it follows that it cannot be successful in establishing its claim for the recovery of the workers' compensation premium increase.
As pointed out by the supreme court in Trahan v. McManus, 97-1224, pp. 8-9 (La.3/2/99); 728 So.2d 1273, 1278, were we to apply the literal language of La.Civ. *865 Code art. 2315, a tortfeasor might be "held liable to repair any damages remotely caused by his or her fault." However, "[a]s a matter of policy, the courts, under the scope of duty element of the duty-risk analysis, have established limitations on the extent of damages for which a tortfeasor is liable." Id. We conclude that as a matter of policy, these limitations encompass the request for relief sought by Louisiana Swabbing.
The method for analyzing whether a particular risk falls within the scope of duty element is set forth in PPG Indus., Inc. v. Bean Dredging, 447 So.2d 1058, 1061 (La.1984) as follows:
Rules of conduct are designed to protect some persons under some circumstances against some risks. Malone, Ruminations on Cause in Fact, 9 Stan. L.Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). A judge, when determining whether the interest of the party seeking recovery of damages is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in the terms of the moral, social and economic values involved, as well as with a view toward the idea of justice.
In that case, a customer of Texaco, the operator of a natural gas pipeline, sued a dredging contractor who had negligently damaged the pipeline, seeking to recover its economic losses arising from the inability of the pipeline to service its needs during the repair process. In rejecting the plaintiff's demands, the supreme court considered the application of La.Civ.Code art. 2315 and applied a duty-risk analysis, concluding:
There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted, however, a rule of law is seldom intended to protect every person against every risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third person who had contracted with the owner of the injured property will thereby suffer an economic loss.
Moreover, imposition of responsibility on the tortfeasor for such damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class." Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred but for defendant's negligence. If any of PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred but for defendant's negligence. Because the list of possible victims and the extent of economic damages *866 might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages.
Id. at 1061-62.
The jurisprudence of this state has applied the PPG Indus., Inc . analysis to similar issues. See, e.g., Babin v. Texaco, Inc., 449 So.2d 718 (La.App. 3 Cir.), writ denied, 456 So.2d 165 (La.1984) (rejecting a class action demand of employees of a salt mining company against an oil drilling company for lost salary, retirement benefits, and fringe benefits damages sustained when the oil drilling company pierced the salt dome of the mine and flooded the mine, thereby forcing its closure); Peterson v. Western World Ins. Co., 491 So.2d 78 (La.App. 1 Cir.1986) (rejecting a closely held corporation's claim for loss of profits arising from injuries suffered by its president and sole shareholder while performing maintenance on a water tower owned by the hunting club); Dempster v. Louis Eymard Towing Co., Inc., 503 So.2d 99 (La.App. 5 Cir.), writ denied, 505 So.2d 1136 (La.1987) (rejecting claim of commercial fishermen for economic damages for loss of their fishing site from the owners of barges that had collided and fouled the site with debris); Domingue v. Reliance Ins. Co., 619 So.2d 1220 (La.App. 3 Cir.1993) (rejecting employer's claim for loss of profits due to its employee's inability to work during his convalescent period following automobile accident caused by the individual the employer sought to recover from); Crockett v. Cardona, 97-2346 (La.App. 4 Cir. 5/20/98); 713 So.2d 802 (rejecting bride's claim for mental distress damages from driver of vehicle which struck her groom's vehicle, causing the groom to be late for the wedding).
Louisiana Swabbing bases its right to recover the increase in workers' compensation insurance premiums on the fact that it employed the injured workers. While we recognize that the scope of liability under La.Civ.Code art. 2315 is very broad, we do not find the scope sufficiently broad to encompass this element of damages. Paraphrasing the language in PPG Indus., Inc., there is clearly an ease of association between the rule of law which imposes a duty on Eldridge not to negligently damage property belonging to Louisiana Swabbing, but it is much more difficult to associate that same rule of law in terms of the moral, social and economic values involved with the risk of injury and the increase in insurance premiums sustained by Louisiana Swabbing. It is highly unlikely that the moral, social, and economic considerations underlying the imposition of the duty breached by Eldridge encompass the risk that Louisiana Swabbing, who had contracted with a third party for insurance coverage, would suffer an increase in insurance premiums.
In fact, it is difficult to understand why such a premium increase is mandated. The facts before us indicate that Eldridge was solely at fault in causing the accident giving rise to the employees' injuries. Additionally, nothing in the record suggests an inability of the defendants to pay for any damages sustained. Each employee has a personal cause of action for the recovery of his individual damages under La.Civ.Code art. 2315, and the workers' compensation insurer can either intervene in those actions or pursue recovery of the amounts paid in compensation benefits in a separate action against Eldridge and Enterprise pursuant to La.R.S. 23:1101(B). It appears that the workers' compensation insurer has the ability to be made whole and to receive a windfall for an accident in which neither the employer nor employee is at fault. To recognize the cause of action suggested by Louisiana Swabbing would be to expand "the list of possible victims and the extent of economic damages *867 ... indefinitely." PPG Indus., Inc., 447 So.2d at 1061-62. Certainly, it would create a new policy dilemma by encouraging the rewriting of insurance policies to include premium increases in accidents in which the insured was not at fault. Accordingly, we find no error in the trial court's judgment.

DISPOSITION
For the foregoing reasons, we affirm the trial court's grant of the summary judgment in favor of Nathan Eldridge, Jr., and Enterprise Products Company and against Louisiana Swabbing Service, Inc., dismissing its claim for the increase in workers' compensation insurance premiums it sustained as a result of the automobile accident on August 25, 1998. We tax all costs of this appeal against Louisiana Swabbing Service, Inc.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
PICKETT, J., dissents for the reasons assigned by THIBODEAUX, J.
THIBODEAUX, J., dissenting.
I respectfully dissent. The majority's reliance on PPG Indus., Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984), is misplaced. In PPG, a dredging contractor, Bean Dredging, which negligently damaged a gas pipeline owned by Texaco, was sued for economic loss incurred by Texaco's contract customer, PPG, which was required to obtain gas from another source during the period of the pipeline repair. The court held that La.Civ.Code art. 2315 does not encompass a cause of action in favor of a third party for indirect economic loss caused by a tortfeasor's negligent conduct. PPG's cause of action was too remote for recovery.
In this case, Louisiana Swabbing is not a third party. Enterprise negligently damaged Louisiana Swabbing, and thus the question is whether Louisiana Swabbing can prove the element of damages it claims for increased workers' compensation insurance premiums. It is reasonable to conclude that Enterprise could have forseen the risk of this particular injury to Louisiana Swabbing. The accident was caused by Enterprise's substandard conduct which resulted not only in the property damage to Louisiana Swabbing but also in the serious injuries of four of Louisiana Swabbing's employees. Enterprise is not entitled to judgment as a matter of law. In damaging Louisiana Swabbing's property and injuring its employees in the manner in which it did, a fact-finder could reasonably discern that Enterprise could have forseen that Louisiana Swabbing would have increased workers' compensation insurance premiums as a result.
NOTES
[1] The supreme court, in Perkins, identified the five elements of the duty-risk analysis as "(1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element)." Perkins, 782 So.2d at 611.