930 So.2d 125 (2006)
SEVERN PLACE ASSOCIATES, A Louisiana Partnership In Commendam
v.
AMERICAN BUILDING SERVICES, INC. and Lafayette Insurance Co. and IB & M.
No. 05-CA-859.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2006.
*126 Philip R. Bulliard, Metairie, Louisiana, for Plaintiff/Appellant.
Raymond A. Pelleteri, Jr., New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Plaintiff appeals a trial court judgment granting defendants' exception of no cause of action. For the following reasons, we affirm.
On March 31, 2004, Plaintiff, Severn Place Associates ("Severn"), filed suit against defendants, American Building Services ("American") and Lafayette Insurance Company ("Lafayette"), through La. R.S. 22:655 (Direct Action Statute), seeking damages allegedly resulting from American's employee's negligence.
Severn contracted with American[1] to provide nightly janitorial services in Severn's office building. In its petition, Severn alleges that on May 16, 2003, one of American's employees left for the evening with the water running in a janitor's sink, which caused flooding to the building.
American and its liability insurer, Lafayette, hired a company specializing in water and moisture removal to dry out the building. Thereafter, Severn presented an estimate to defendants reflecting the cost to repair additional damages caused by the flooding. American and Lafayette refused to pay for any additional repair to the building. As a result, Severn made a claim with its own insurer, Hanover, which paid the claim.
Hanover filed a subrogation action against defendants seeking reimbursement for money expended. On May 14, 2004, defendants entered into a Settlement Agreement and General Release with Hanover and Severn, by which defendants reimbursed Hanover for money expended and wherein Severn agreed to limit any claim for damages to the cost of future increased insurance premiums with Hanover.
Severn then amended its petition to claim only damages resulting from increased insurance premiums. Thereafter, defendants filed exceptions of no cause of action and prematurity stating that Severn's insurance premiums had not increased. The trial court granted defendants' exceptions. However, the court granted Severn fifteen days to amend its petition to state a cause of action. Following the filing of Severn's second amended petition, which states that its insurance premiums did in fact increase 126%, defendants filed exceptions of no cause of action and res judicata, which the trial court granted. It is from the judgment granting defendants' exception of no cause of action that Severn appeals.

DISCUSSION:
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy based on the facts alleged in the petition. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). In reviewing the petition, *127 well-pleaded allegations of fact are accepted as true. Id. The issue at trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, 131.
Accepting all allegations in plaintiff's amended petition as true and applying the legal principles set forth above to the instant case, we find plaintiff's petition fails to allege sufficient facts to state a cause of action in negligence against defendants.
The question before this Court is whether Louisiana law recognizes a cause of action against a tortfeasor for increased insurance premiums arising from the tortfeasor's negligence. We evaluate this question under the fourth element of the duty-risk analysis, described as the "scope of liability or scope of protection element."[2]Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 (La.3/23/01), 782 So.2d 606, 611. Accordingly, our analysis must determine whether American's employee's "substandard conduct was a legal cause of the plaintiff's injuries." Id.
A plaintiff must prove each and every element of the duty-risk analysis to be successful in its claim for recovery. Because we find that Severn cannot establish the fourth element, its claim for damages for increased insurance premiums must fail.
Determining the scope of a duty is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty." Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991). There "must be an `ease of association' between the rule of conduct, the risk of injury, and the loss sought to be recovered." Louisiana Swabbing Service, Inc. v. Enterprise Products Company, 00-1161 (La.App. 3 Cir. 5/2/01), 784 So.2d 862, citing Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (La.1972).
Literally interpreted, La. Civ.Code art. 2315 may hold a tortfeasor liable for any damage remotely caused by his or her fault. However, "[a]s a matter of policy, the courts, under the scope of duty element of the duty-risk analysis, have established limitations on the extent of damages for which a tortfeasor is liable." Id. We conclude, as a matter of policy, that the limitations established preclude Severn's request for damages in the form of increased insurance premiums.
A cause of action for increased insurance premiums is an issue of limited impression in Louisiana. However, the Third Circuit did address this issue in Louisiana Swabbing Service, Inc. v. Enterprise Products Company. In that case, four employees of Louisiana Swabbing were traveling in a company truck on I-10 in Lafayette Parish, Louisiana. A tortfeasor hit the truck, seriously injuring all four employees. Louisiana Swabbing's workers' compensation insurer paid benefits and medical expenses to the injured employees and subsequently raised Louisiana Swabbing's insurance premiums. Louisiana *128 Swabbing brought an action against the tortfeasor to recover damages. Thereafter, the parties entered into a Settlement Agreement, dismissing all claims for damages except those resulting from the increased cost of insurance premiums.
On appeal, the Third Circuit affirmed the trial court's decision granting summary judgment in favor of defendant, stating, "[i]t is highly unlikely that the moral, social, and economic considerations underlying the imposition of the duty breached by Eldridge encompass the risk that Louisiana Swabbing, who had contracted with a third party for insurance coverage, would suffer an increase in insurance premiums." Louisiana Swabbing, 784 So.2d 862 at 866. The court continued, reasoning that the duty-risk analysis is premised on the policy perspective that as a society, we want to dissuade tortfeasors from committing torts by considering the moral, social, and economic repercussions of their potential actions. Id. Thus, the Third Circuit held that, as a matter of policy, the damages sought were too remote. The court found it was not reasonably foreseeable for the defendant to consider the plaintiff's increased workers' compensation premiums in the potential moral, social, and economic repercussions of his actions. Id.
Though this may be an issue of limited impression in Louisiana, other states have consistently failed to recognize a cause of action for increased insurance premiums based on a tortfeasor's negligence. See, Johnson v. Broomfield, 153 Misc.2d 113, 580 N.Y.S.2d 122 (N.Y.Just.Ct., 1991) (holding that in an automobile accident a negligent driver could not be held liable for an increase in plaintiff's insurance premiums because the consequences were too remote and the defendant had no control over the contractual agreements between plaintiff and its insurer); Silvernail v. Hallenback, 33 Misc.2d 83, 226 N.Y.S.2d 48 (Sup.Ct.NY, 1962) (holding negligence of driver in automobile accident was not the proximate cause of injured's insurance premium increase because negligent driver could not reasonably foresee the increase as a result of the accident; court further found the increase was a result of the contractual relationship between plaintiff and its insurer); Fischl v. Paller & Goldstein, 231 Cal.App.3d 1299, 282 Cal.Rptr. 802 (1991) (holding that increased workers' compensation insurance premiums are not foreseeable enough to state a cause of action in recovery for negligence); Unique Paint Co., Inc. v. Wm. F. Newman Co., Inc., 201 Ga.App. 463, 411 S.E.2d 352 (1991) (holding that an increase in workers' compensation premium is too remote a consequence to recover in a breach of contract claim); RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 650 A.2d 153 (1994) (declining to allow a cause of action for increased workers' compensation insurance premiums as a matter of public policy because the insured's economic harm was too remote a result of the tortfeasor's actions); Schipke v. Grad, 562 N.W.2d 109 (S.D.1997) (refusing to allow a cause of action for increase in employer's workers' compensation premiums); Southland Constr., Inc. v. Gr. Orlando Aviation, 860 So.2d 1031 (Fla.App. 5 Dist.2003) (holding that increased workers' compensation insurance premiums were too remote a cause of action for recovery); Fountain City Leasing, Inc. v. Key Transport, Inc., 65 Ohio App.3d 100, 582 N.E.2d 1063 (1989) (holding that no recovery exists against a third party for increase in workers' compensation insurance premiums absent a legal relationship based on warranty or contract); Vogel v. Liberty Mutual Ins. Co., 214 Wis.2d 443, 571 N.W.2d 704 (Wis. App.1997) (denying plaintiff's claim for increased workers' compensation insurance premiums, finding the damages too remote from the act of negligence).
*129 In Vogel, plaintiff sued to recover an increase in his workers' compensation premiums. Plaintiff's employee was injured in an automobile accident with a third party tortfeasor. Subsequently, plaintiff made a claim with his insurer to pay the employee's medical expenses and lost wages. As a result of that claim, plaintiff's insurance premiums increased. Plaintiff then sued the third party tortfeasor to recover that increase. In its decision, the court notes that "both parties to this action concede [that] liability in tort may be denied based on factors that the courts have termed `public policy considerations.'" Id. at 706. The court gave detailed reasoning denying the plaintiff's cause of action, listing policy determinate factors such as remoteness of damage from injury, proportionality of tortfeasor's culpability to the injury, and whether allowance would leave no sensible stopping point. Id. The court reasoned that failure to use due care while driving was too remote to impose liability for the "collateral consequence" of increased insurance premiums. Id. at 707. The court reasoned that allowing recovery would create a field with no sensible or just stopping point, leaving the court asking "what next?" Id. The court further addressed questions that may arise in the future if the cause of action was allowed: how long would the tortfeasor be required to pay, what factors affect insurance premiums, and what would happen in cases with multiple tortfeasors; would each pay a percentage and how would they be allocated. Id. In sum, the Court determined that a cause of action for increased insurance premiums based on third party negligence opens the door to remote damages that are better precluded as a matter of public policy.
This court acknowledges that, unlike the instant case, the majority of the cases cited above are workers' compensation cases. However, we find the policy considerations and reasons for denying causes of action in tort apply to the instant case.
In this case, Severn seeks recovery for increased insurance premiums that it claims are a result of American's employee's negligence. However, Severn's insurance premiums increased because Severn made a claim with Hanover, its own insurer, to more quickly repair its property. Hanover informed Severn that if it made a claim, its insurance premiums would increase. Therefore, Severn made the decision to make a claim with the knowledge of a future increase in premiums. Severn could have continued to seek additional damages from American and Lafayette; instead, it chose to make a claim with Hanover, which increased its premiums.
Therefore, we find, as a matter of policy, plaintiff has no cause of action in negligence against defendants for its increased insurance premiums; the damages in this case are too remote. We also find plaintiff has no cause of action against Lafayette under La. R.S. 22:1220, which provides a cause of action against an insurance company when it commits one of the listed acts that constitute a breach of the insurer's duty to settle a claim in good faith.[3] The trial judge referenced La. R.S. *130 22:1220 in his reasons for granting defendants' exceptions; defendants argue the action is not available to the plaintiff because Lafayette did not commit any of the acts that constitute a breach of the insurer's duties. Moreover, Severn does not specifically allege that Lafayette acted in violation of La. R.S. 22:1220. Upon review of the record, we find the plaintiff does not have a cause of action against Lafayette for failure to settle a claim under La. R.S. 22:1220.
Applying the legal principles above, we find no error in the trial court's judgment granting defendants' exception of no cause of action. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] We note that American was formerly known as Enterprise Janitorial Services.
[2] The five elements of the duty-risk analysis identified by the Louisiana Supreme Court in Perkins are:

"(1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element)." Perkins, 782 So.2d at 611.
[3] La. R.S. 22:1220 reads as follows:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.