40 So.3d 1244 (2010)
Emily NIKOLAUS
v.
CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE.
No. 2009 CA 2090.
Court of Appeal of Louisiana, First Circuit.
June 11, 2010.
*1245 Jill L. Craft, Crystal G. LaFleur, Baton Rouge, Louisiana, for Plaintiff/Appellee, Emily Nikolaus.
Randall J. Cashio, Gwendolyn K. Brown, Baton Rouge, Louisiana, for Defendant/Appellant, City of Baton Rouge/Parish of East Baton Rouge.
Before DOWNING, GAIDRY and McCLENDON, JJ.
DOWNING, J.
The City of Baton Rouge/Parish of East Baton Rouge (City/Parish) appeals a judgment ordering it to pay damages to Emily Nikolaus, the appellee, for damages arising from flooding of her home. For the following reasons, we affirm the trial court's judgment in part and we reverse in part.

PERTINENT FACTS AND PROCEDURAL HISTORY
Emily Nikolaus bought a home in Baton Rouge, Louisiana, in August 2005. The home is not located in a FEMA flood zone. In April 2006, however, Ms. Nikolaus arrived at her home after a strong rain and found that her house had flooded. Ms. Nikolaus's mother reported the flooding to the City/Parish, which sent a crew out to *1246 clear the drain pipes. Ms. Nikolaus later purchased flood insurance for her home.
At the end of December 2006, Ms. Nikolaus was home when another heavy rain caused her home and property to flood. Ms. Nikolaus filed a claim with her flood insurance carrier. She also filed a lawsuit against the City/Parish alleging that her flood damage was caused by the City/Parish's failure to repair and maintain the drainage system. After a bench trial, the trial court rendered judgment in favor of Ms. Nikolaus and against the City/Parish. The trial court's judgment awarded Ms. Nikolaus $3,500.00 for emotional trauma associated with the April 2006 flood; $5,500.00 for emotional trauma associated with the December 2006 flood; $26,750.63 in property damage for damage to her home and contents; $1,756.00 for the cost of the flood insurance Ms. Nikolaus purchased; interest; and costs, including expert witness fees.
The City/Parish now appeals, asserting five assignments of error:
1. The trial court erred by excluding the plaintiffs homeowner's insurance policy on the basis the evidence constituted hearsay. Under the express terms of the Code of Evidence, the policy was not hearsay because it was an adoptive admission. Further, it was admissible because it was properly authenticated;
2. The trial court erred by awarding damages for the amount of the depreciation;
3. The trial court erred by awarding to the plaintiff damages in the form of the costs that she paid for her flood insurance premiums;
4. The trial court erred by awarding damages to the plaintiff for the emotional trauma associated with her damage to property from the April 2006 flood event because the law indicates that a plaintiff may recover such damages only when she is present to witness the destruction of her properly;
5. The trial court erred by finding in favor of the plaintiff because there is no record evidence to support a finding that the conduct in question was a cause-in-fact of the resulting harm.

DISCUSSION

Unauthenticated Insurance Policy Documents
The City/Parish first argues that an uncertified photocopy of a homeowners' insurance policy that Ms. Nikolaus produced in response to a request for production of documents should have been admitted into evidence as an adoptive admission. The City/Parish sought admission of the document because it contained a subrogation clause that allegedly would control the outcome of this matter. The trial court sustained Ms. Nikolaus's objection that the policy and an associated statement of loss document were hearsay and were not authenticated. We find no error in the trial court's ruling.
Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. Price v. Roy O. Martin Lumber Co., 04-0227, p. 8 (La.App. 1 Cir. 4/27/05), 915 So.2d 816, 822. "`Authentication' is a process whereby something is shown to be what it purports to be." Id. "Evidence must either be authenticated as provided in La. C.E. art. 901, or it must be self-authenticating." Id. See La. C.E. art. 902. Louisiana Code of Evidence article 901(B) includes a non-exclusive list of methods that may be utilized to authenticate evidence, including testimony of a witness with knowledge and any method of authentication or identification *1247 provided by Act of Congress or by Act of the Louisiana Legislature.
Responses to discovery requests for production are not included in the Art. 901 B list. And we know of no code article, statute or case that automatically makes a response to a request for production an admission or otherwise admissible on the basis that it was produced in discovery alone. To the contrary, evidence is not admissible solely on the ground that it was produced in response to a discovery request.[1]See Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935, p. 5-6 (La.App. 1 Cir. 2/14/97), 691 So.2d 208, 211. Under La. C.E. art. 901, authentication of evidence is a condition precedent to admissibility. Id.
Nonetheless, the City/Parish argues that the photocopy of the policy is an adoptive admission and, as such, is an exception to the hearsay rule pursuant to La. C.E. art. 801 D(2)(b), which provides that a party's statement is not hearsay if it is a "statement of which he has manifested his adoption or belief in its truth[.]" The City/Parish suggests an answer to an interrogatory is such an admission. The City/Parish argues that the photocopy should be admitted where nothing calls the document's authenticity into question, citing Reed v. American Equity Ins. Co., 05-1298, p. 6 (La.App. 3 Cir. 4/5/06), 927 So.2d 1210, 1215, among other cases.
In that regard, we first note that the record contains no statement, either testimonial or written, by which Ms. Nikolas has manifested her belief that the photocopy is an authentic copy of the insurance policy, even if she were qualified to attest to the copy's authenticity. Rather, when questioned, Ms. Nikolaus testified that she believed the "flood insurance policy would have been something different" than the photocopy provided. Further, Ms. Nikolaus's counsel specifically objected to the photocopy as being unauthenticated and hearsay. Also, at the beginning of the trial, the parties declined to stipulate to the admissibility and authenticity of the evidence. Here, the photocopy of the insurance policy is not self-authenticating and is not otherwise authenticated.
We additionally note that La. R.S. 13:3733 provides a mechanism for authenticating business records and documents "for purposes of ... admissibility under Louisiana law." The City/Parish, however, did not employ this statutory mechanism.
The City/Parish also argues that the photocopy is admissible as a business record pursuant to La. C.E. art. 901 A. The trial court disagreed, noting that Ms. Nikolaus was not in the business of being flooded. The trial court did not err in this regard.
We therefore conclude that the trial court did not err in failing to admit the unauthenticated photocopies of the insurance policy and other documents into evidence. The City/Parish's first assignment of error is without merit.

Depreciation
Without the evidence contained in the excluded insurance documents, the record contains no evidence, whether or not sufficient, *1248 regarding depreciation in value of Ms. Nikolaus's property and improvements. Accordingly, the City/Parish's second assignment of error is without merit.

Insurance Premiums
The City/Parish next argues that the trial court erred in awarding Ms. Nikolaus the premiums she paid for flood insurance. This third assignment of error has merit.
While we agree with the trial court that Ms. Nikolaus would not have had to purchase flood insurance but for her flooding problems, we are aware of no law or jurisprudence that allows her to recover for these damages. In Severn Place Associates v. American Bldg. Services, Inc., 05-859 (La.App. 5 Cir. 4/11/06), 930 So.2d 125, the Louisiana Fifth Circuit analyzed whether a cause of action existed for increased insurance premiums under Louisiana law. Concluding that no such cause of action exists, the fifth circuit concluded that "the policy considerations and reasons for denying causes of action in tort apply to the instant case." Id., 05-859 at p. 8, 930 So.2d at 129.
We agree with the fifth circuit's reasoning in Severn Place Associates and conclude that no right of action exists for recovery of insurance premiums based on a tortfeasor's negligence or strict liability. Accordingly, we will reverse the trial court's judgment insofar as it awards $1,756.00 to Ms. Nikolaus for flood insurance premiums.

Emotional Distress
The City/Parish argues in its fourth assignment of error that the trial court erred in awarding damages for emotional distress resulting from the April 2006 flood in her home because she was not present to witness the destruction of her property. We disagree.
An award for mental anguish as a result of damage to property is normally permitted in four instances: (1) property damaged by an intentional or illegal act; (2) property damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) property damaged by acts constituting a continuous nuisance; and (4) property damaged at a time which the owner thereof is present or situated nearby and the owner experiences trauma as a result. Boudreaux v. State, Dept. of Transp. and Development, 04-0985, p. 15 (La.App. 1 Cir. 6/10/05), 906 So.2d 695, 707. It appears that these categories were first cumulated and examined in Farr v. Johnson, 308 So.2d 884, 885-86 (La.App. 2 Cir.1975). The Farr court then distinguished cases in which emotional distress was caused by ordinary negligence, presumably pursuant to La. C.C. art. 2315. It said, "Without analyzing in this opinion the varying rationale of the cases allowing recovery, it should suffice to say they are distinguishable from the instant case where the act causing the property damage was simple negligence, the property owner was not present and received no direct mental injury from the act itself, and the `mental anguish' proven amounted to minimal worry and inconvenience over the consequences of the damage." Id., 308 So.2d at 886.
Here, the trial court found the City/Parish liable under La. R.S. 9:2800. La. R.S. 9:2800 A provides that "[a] public entity is responsible under Civil Code Article 2317[2] for damages caused by the condition of buildings within its care and custody." *1249 Article 2317 applies to "acts of others and things in custody" and formerly imposed strict liability for damage occasioned by things in our custody. Accordingly, an award of damages for emotional distress was allowable pursuant to the above criteria.
While Civil Code Article 2317.1[3] removes Art. 2317 from strict liability, the factual basis for imposing liability under Article 2317 is unchanged. We see no legal, logical, or reasonable basis to exclude damages for mental anguish and suffering based on the elimination of strict liability. Accordingly, an award of damages for emotional distress is still allowable for damages imposed pursuant to Civil Code Article 2317.
Even so, "the owner of the damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to physical injury, directly resulting from the property damage." Creel v. Southern Natural Gas Co., 03-2761, p. 17 (La.App. 1 Cir. 10/14/05), 917 So.2d 491, 502. Here, the trial court noted that the issue and extent of the emotional damage was questioned. The trial court further noted Ms. Nikolaus's testimony regarding her emotional distress in connection with the April 2006 flood, which was corroborated by testimony of other witnesses. Under these circumstances, we cannot conclude that the trial court was clearly wrong in implicitly finding that Ms. Nikolaus had proven sufficient psychic trauma to support the award for emotional damage in connection with the April 2006 flood at her home.
We therefore find no merit in the City/Parish's fourth assignment of error.

Sufficiency of the Evidence
In its fifth assignment of error, the City/Parish argues that the evidence in the record does not support a finding that the City/Parish's conduct was a cause-in-fact of Ms. Nikolaus's harm. We disagree.
The record clearly reflects that the trial court imposed liability on the City/Parish for failure to maintain and repair the drainage system around Ms. Nikolaus's home. The City/Parish, however, asserts that the trial court based its ruling on defects in the drainage system after the trial court found that such claims had prescribed. While the trial court did hear some testimony that implicated the design of drainage system, the trial court expressed that it would not consider such evidence. The record readily supports the trial court's judgment on the bases of inadequate maintenance and repair. While some of the evidence was conflicting between Ms. Nikolaus and her witnesses and the City/Parish and its witnesses, we cannot conclude that the trial court was clearly wrong in crediting the evidence supporting Ms. Nikolaus.
Accordingly, we conclude the City/Parish's fifth assignment of error lacks merit.

DECREE
For the foregoing reasons, we reverse the judgment of the district court insofar as it awarded Ms. Nikolaus $1,756.00 for flood insurance premiums. In all other respects, we affirm the judgment of the trial court. Costs of this appeal are assessed *1250 to the City of Baton Rouge/Parish of East Baton Rouge in the amount of $3,182.96.
REVERSED IN PART; AFFIRMED IN PART
GAIDRY, J., assigns additional reasons.
McCLENDON, J., dissents in part and assigns reasons.
DOWNING, J., specially concurring.
I write this special concurrence to reiterate some of the acceptable methods for introducing insurance policies into evidence:
1. When an insurance company is a party, its produced policy could be considered an admission under certain circumstances. See Arias v. Stolthaven New Orleans, L.L.C., 08-1111, pp. 13-16 (La.5/5/09), 9 So.3d 815, 824-25, for a discussion distinguishing a party insurer's failure to respond to requests for admissions;
2. An insurance policy could be introduced as a properly authenticated business record of an insurance company;
3. A party that is not an insurance company could request the production of an insurance policy certified according to La. R.S. 13:3733;
4. The parties could stipulate to admissibility and authenticity of a policy;
5. An opposing party could decline to object to the introduction of an insurance policy;
6. Possibly, a party that is not an insurance company could be requested to admit that the terms and conditions of a copy were the actual terms and conditions of the policy in question.
GAIDRY, J., agreeing and assigning additional reasons.
I agree with the majority's reasoning and the result reached, and offer the following additional observations.
I take issue with the contentions of the City/Parish and the holding of the trial court regarding the prescription of any claims based upon defective design of the drainage system. The City/Parish argues that any "allegations" or "claims" of negligent design of the subdivision and its drainage system had long prescribed, since the approval process occurred in 1966. The trial court seemed to uncritically accept, without analysis, the astonishing proposition that a type of negligent act or omission can prescribe, before any damage is sustained and a cause of action for damage resulting from the act or omission accrues. Negligent acts or omissions do not prescribe; causes of action prescribe. A delictual cause of action, under our duty-risk analysis, requires that damage or injury be caused as the result of the breach of a legal duty. Until such damage is found to have occurred, there is no tort. Such an incomplete "tort" cannot prescribe, because the prescriptive period will not have commenced. Thus, even if the trial court had predicated its finding of liability upon negligent design of design of the subdivision and its drainage system, it would not have been in error on the issue of prescription.
McCLENDON, J., dissents in part.
I disagree with the majority's holding that emotional distress damages are recoverable under the facts of this case. Louisiana courts have recognized recovery for mental anguish for damage to property in four limited circumstances, including recovery of such damages for acts in which the tortfeasor is strictly liable. See Farr v. Johnson, 308 So.2d 884, 885-86 (La.App. *1251 2 Cir.), applications not considered, 310 So.2d 854, 315 So.2d 143 (La.1975). However, Louisiana Civil Code art. 2317 no longer imposes strict liability upon the tortfeasor, but rather utilizes a negligence standard. See e.g., Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law, § 14.02 (2004) ("Consequently, the addition of `knowledge' as part of the plaintiff's case-in-chief sounds the death knell for Article 2317 strict liability.") and William E. Crawford, Tort Law, Louisiana Civil Law Treatise Volume 12, § 25:3, pp. 683-84 (2009) ("... [T]he legislature dramatically returned the articles [including 2317] to negligence standards with explicit language.") Accordingly, because Article 2317 is no longer a strict liability article and because I find that none of the other circumstances recognized by the court in Farr are applicable under the facts of this case, I would reverse the trial court's judgment to the extent that it awarded damages for emotional distress.
NOTES
[1] The remedy for failure to adequately respond to discovery requests under La. C.C.P. art. 1462 B is a motion to compel. Under La. C.C.P. art. 1471. failure to comply with an order to compel may result in an order that a matter shall be taken as established. We also note that failure to answer a request for admission could result in the admission of a matter. La. C.C.P. art. 1467. See also Arias v. Stolthaven New Orleans, L.L.C., 08-1111, pp. 13-16 (La.5/5/09), 9 So.3d 815, 824-25, for a discussion distinguishing a party insurer's failure to respond to requests for admissions from other failures to respond to discovery.
[2] Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act. but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[3] Article 2317.1, effective April 16, 1996, provides that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.'"