GAUDIN, Judge.
These cases arose from the flooding of residences in the Lincolnshire and West-minister subdivisions in Marrero, Louisiana as a result of Hurricane Juan in October, 1985. A number of homeowners filed suits in the 24th Judicial District Court against the West Jefferson Levee District, Forum Insurance Company, the Parish of Jefferson, Royal Insurance Company, Travelers Insurance Company, CIT Corporation, Continental Insurance Company, Albert J. Ward Jr., Manor Heights, Inc., Live Oak Builders, Inc., Kensington Development Corporation, Maplewood Park Homes, Stuart Homes, Inc., United States Fidelity and Guaranty Company and Northern Assurance Company of America.
Petitioners’ claims against the West Jefferson Levee District were settled for $8,200,000.00. The other defendants filed motions for summary judgment, which were granted by the trial judge. Plaintiffs appealed, contending that the dismissed defendants, in various ways, contributed to the demise of the levee system surrounding the subdivisions and should be held accountable.
Our review of the documents and evidence, however, indicates that the West Jefferson Levee District was solely responsible for the flooding; accordingly, we affirm the granting of the judgments summarily dismissing claims against the other defendants.
BACKGROUND
In the late 1960s, Anthony Abraham and his company, Orleans Village Corporation, purchased and began developing Lincoln-shire and Westminister. A drainage canal was dredged and a so-called interim levee was built. Attached to this opinion is a sketch of the subdivisions showing the interim levee and another levee to the south, designated as the Southern/CIT levee.
On January 21, 1971, the Parish of Jefferson, hereinafter called simply the Parish, adopted resolution 17519, acknowledging the canal and interim levee drainage improvements. The Parish accepted the canal and levee for maintenance and agreed to reimburse Orleans Village for construction costs.
In 1972, Orleans Village constructed a second levee, the Southern/CIT levee. On *387 September 21,1972, the Parish passed resolution 20627, accepting for maintenance the second levee and pumping facilities.
Orleans Village obtained a $9,500,000.00 loan from CIT Corporation on October 4, 1974. Approximately two years later, on November 9, 1976, CIT acquired the property by a dation en paiement after Orleans Village defaulted on the loan. CIT, believing that it was prohibited by law from retaining or developing the property, began negotiations with several builders-developers to sell various lots in the subdivisions.
By Act 820 of 1980, the Louisiana Legislature established the West Jefferson Levee District, investing it with control of all public levees within the designated district. On May 26, 1983, the Levee District expressly assumed full responsibility for levees in the Lincolnshire-Westminister area.
Prior to 1980, the Lafourche Basin Levee District was charged with maintaining all levees in West Jefferson. The Lafourche District, however, was lax. It refused to impose a statutorily authorized tax and it did not adequately inspect or repair levees on the West Bank. During this time (before 1980), the Parish of Jefferson helped maintain some levees, including the Lin-colnshire-Westminister levees, through its drainage department.
Act 820, which became effective on September 12, 1980 and which amended Chapter 4 of Title 38 of the Louisiana Revised Statutes of 1950, gave the West Jefferson Levee District control over “... all the land in the Parish of Jefferson lying on the west side of the Mississippi River.” The Act stated that this land shall be subject to taxation, local assessment and forced contributions for the purpose of raising funds to construct and maintain levees “... and to protect the lands therein from overflow.”
Section 1480.4 says, in part, that the Levee District “... may buy and hold, or sell and transfer, title to property, make and execute contracts, and do and perform all acts necessary to provide for flood and levee drainage control for the protection of the lands within the district. To that end, the board and the district shall have all powers and authority conferred on such boards and on levee districts generally by the constitution and statutes of Louisiana.”
Section 1480.5, in clear and compelling language states, in part:
“It (the Levee District) shall use all means at its command to strengthen, repair or construct any portion of the levees that may demand attention ...”
Hurricane Juan struck Louisiana on October 29, 1985. For two days, the Lincoln-shire-Westminister levees, drainage system and pumping station kept the subdivisions dry. On the third day, however, rising water poured over the levees and flooded many homes.
Lawsuits were filed naming a string of defendants, including J.J. Krebs, Inc., an engineering firm, the West Jefferson Levee District, etc. Krebs filed a motion for summary judgment and was previously dismissed as a defendant, reference Akins v. Parish of Jefferson, 591 So.2d 800 (La.App. 5 Cir.1991), writs denied at 592 So.2d 1288 (La.1992).
We shall now discuss the other defendants, stating reasons why the motions for summary judgment dismissing them were correctly adjudicated.
FORUM INSURANCE COMPANY
On February 18, 1992, the trial judge granted Forum’s motion for summary judgment. Forum had issued a “Public Officials Liability Policy” to the Levee District, providing coverage for a variety of things but excluding claims “... for damage to or destruction of any tangible property including loss of use thereof
[[Image here]]
To prevent double or overlapping coverage, the Forum policy also contained an escape clause providing that Forum shall not be liable in connection with any claim made against the Parish which is insured by another valid policy.
Appellants contend, nonetheless, that Forum, by terms in its policy, is responsible for loss of resale value of their homes. *388 Appellants argue that the “loss of use” wordage in the exclusion is limited to that particular expression and does not exclude other forms of consequential damages, such as the loss of resale value. The trial judge did not agree with this contention and neither do we. All damage to or destruction of tangible property, such as a residence, is excluded from coverage, and that would necessarily include loss of resale value. The wording “including loss of use” cannot be interpreted to exclude any and all other types of damages.
Regarding the escape clause, the Levee District had in effect a Comprehensive General Liability Policy issued by National Union Insurance Company which included physical injury to or destruction of tangible property.
Forum’s motion for summary judgment was correctly granted as there was no genuine issue of material fact as to coverage. The policy’s wording excludes coverage for loss of resale value; further, the escape clause is valid.
PARISH OF JEFFERSON
Appellants oppose the granting of the motion for summary judgment in the Parish of Jefferson’s favor, contending that genuine issues of material fact and law remain concerning the Parish’s possible liability. Appellants say that the Parish inspected and maintained the subdivisions’ levees after 1980; and that after the creation of the West Jefferson Levee District, responsibility for the levee system was shared by the Parish and Levee District. Also, appellants contend that the Parish neglected the subdivisions’ levees prior to 1980 and permitted them to become completely overgrown with trees and other forms of vegetation.
In May of 1983, when the Parish turned over the Lincolnshire-Westminister levees to the Levee District, the levees met Corps of Engineer standards of six feet above sea level. At the time of the 1985 hurricane, the southwest corner of the subdivisions’ levee system was less than four feet above sea level. Water overtopped this section and entered the subdivisions.
Originally, the trial judge denied the Parish’s motion for summary judgment. On reconsideration, the motion was granted. The trial judge explained that when he at first denied the Parish’s motion he hadn’t read the statute creating the West Jefferson Levee District. He said he had erroneously thought that the Parish and Levee District were jointly responsible for upkeep of the levees.
After considering Act 820 and after noting that the Levee District had never “called upon” the Parish for assistance, the trial judge properly granted the Parish’s motion.
There is nothing in this record indicating that after 1980 (and, arguably, before that time) the Parish had a duty to maintain West Jefferson levees although the Parish did sometimes act when the Lafourche District did not. Regardless, it is undisputed that had the subdivisions’ levees been maintained by the Levee District at six feet, the flooding would not have occurred. It is also clear from the record that west bank levees subside and have to be, as one expert said, continuously lifted. Another expert said that levees are built and must be constantly maintained for integrity and height.
The Levee District was solely negligent for letting the Lincolnshire-Westminister levees sink to less than four feet. Appellants’ allegations about the Parish being partially responsible for the sinking are without serious support.
The record contains only one instance of neglect by the Parish or damage caused by a Parish employee. Before Act 820 became law in 1980, it appears from a document in evidence that a segment of levee was damaged by a Parish maintenance crew. This part of the levee was repaired by Parish personnel and was not breached during the hurricane.
As far as Jefferson Parish is concerned, the record does not indicate that there are any contested factual or legal issues sufficient to defeat summary judgment.
*389 ROYAL INSURANCE COMPANY AND TRAVELERS INSURANCE COMPANY
These insurance companies had issued liability policies to the Parish of Jefferson which were in effect at the time of the hurricane. If the Parish cannot be held responsible, these insurance companies likewise must be dismissed as party defendants.
Both policies, incidentally, excluded flood coverage. Even if the Parish’s motion had been denied, Royal and Travelers had legitimate policy defenses which would have successfully supported their respective motions for summary judgment.
CIT CORPORATION AND CONTINENTAL INSURANCE COMPANY
CIT Corporation and its insurer, Continental Insurance Company, were dismissed as party defendants because the trial judge concluded that CIT owed no duty to residents of Lincolnshire and Westminister. The homeowners, on appeal, contend that LSA-C.C. arts. 741, 2315 and 2316 imposed on CIT a duty to provide hurricane protection and that the corporation had a duty to warn the residents, the Parish of Jefferson and the West Jefferson Levee District of problems with and defects in the subdivisions’ levee system. The motion for summary judgment in favor of CIT and Continental was signed on February 18, 1992.
Art. 741 deals with apparent servitudes while Arts. 2315 and 2316 are this state’s general tort and negligence articles.
Shortly after obtaining the property after Orleans’ default in late 1976, CIT launched efforts to sell lots to A.J. Ward Jr., president of Manor Heights Company, Inc. and Live Oak Builders, Inc., and Victor Ray Rose, president of Stuart Homes, Inc. and Maplewood Homes, Inc. CIT’s option agreement with Ward, etc. is dated May 27, 1977. In conjunction with this agreement, appellants contend, CIT was obligated to provide and maintain stable, in-place hurricane protection or-at least to warn property buyers that the levee system was not adequate.
In May, 1983, however, the levees were sufficient to withstand flooding of Juan’s magnitude. There are no precise allegations of CIT’s breach of duty after May, 1983 to preclude summary judgment.
Actually, appellants’ claims about a servitude and about CIT being a co-developer of Lincolnshire and Westminister were made for the first time in a memorandum in opposition to CIT’s final (and successful) motion for summary judgment. Earlier claims of negligence focused on two culverts inserted in one of the levees to assist drainage. Evidence in the record indicates that these culverts were not responsible for or involved in the flooding. See Akins v. Parish of Jefferson, supra at page 802. Appellants do not now argue that the culverts were negligently or even inadvertently placed.
In granting CIT’s motion for summary judgment, the trial judge did not formally assign reasons. In affirming this judgment, we note (1) that construction, maintenance and supervision of levee systems is a governmental function, (2) that government cannot delegate or attempt to share this function with a private entity, (3) that CIT did not cause or contribute to the failing of the Lincolnshire-Westminister levees, certainly not subsequent to May, 1983 and (4) that CIT had no contractual or statutory duty to warn anyone about any unsafe levee condition, assuming one did exist.
The exact terms and conditions of the settlement between the plaintiffs and the West Jefferson Levee District are not.of record; however, the petitioners were represented by very able counsel who proceeded primarily against the real legal and factual culprit, the Levee District.
In any event, there are no disputed material facts and we are unaware of any disputed law or jurisprudence to cause reversal of the motion dismissing CIT and Continental Insurance Company. No legal authority supports the imposition of any duty on CIT with regard to Lincolnshire and Westminister residents damaged by Juan’s flooding.
*390 WARD, MANOR HEIGHTS ET ALS.
The remaining named defendants should be retained in this litigation, according to appellants, because they manufactured defective lots and failed to warn of levee defects; thus claims lie in redhibition and tort.
Of the three development entities, only Stuart Homes constructed homes (in West-minister only). Kensington and Maple-wood either purchased raw land or held property for resale. USF & G insured Ward, Manor Heights and Live Oak while Northern insured Stuart, Kensington and Maplewood.
A discussion of any possible responsibility concerning these defendants must begin with the realization that in May, 1983, when the West Jefferson Levee District assumed sole liability, the Lincolnshire-Westminister levees were adequate. There are no allegations of negligence on the part of Ward or any other of these defendants after May, 1983.
In addition, the trial judge found from the undisputed facts and circumstances of this case that these defendants were not manufacturers of defective lots and that they did not breach any duty to warn. Further, Stuart points out that it hired Krebs for all subdivision services and that Krebs has been found not negligent.
The record fully supports the findings on which the motions for summary judgment were based. There is no suggestion that subdivision homes were not sufficiently elevated and there is no evidence that any defendant either failed to obtain any required permit or misled any purchaser. No defendant performed any activity which could have altered the natural drainage of the subdivisions. Plans and specifications of the subdivisions were prepared in exact accord with governmental regulations; at least, there is nothing in this voluminous record indicating otherwise. Instead, appellants must rely, as far as maintaining claims against defendants other than the West Jefferson Levee District are concerned, on the allegation that a particular defendant caused or contributed to the demise of the levee system. All meaningful evidence and testimony implicates only the Levee District, which assumed control in May, 1983 when the levees were then able to withstand Juan-like flooding.
Finally, we note that USF & G and Northern have what appear to be valid policy defenses to the claims made on their respective insureds.
Appellants are to bear costs of these appeals.
AFFIRMED.
*391 APPENDIX
Locations of SUBDIVISIONS^ LEVEES AND PIJtAPING STATION
[[Image here]]
WETLANDS +o Gulf of Mexico