*315
 
 MAX N. TOBIAS, JR., Judge.
 

 []The plaintiffs, Donna Mumphrey Martin, Michael Martin, Lizzie A. Williams, Mitchell Meyer d/b/a Mitchell Meyer Manufacturing, and Andrew Griffin (“Plaintiffs”)
 
 [1]
 
 appeal the trial court’s judgment granting a motion for summary judgment in favor of the defendant, Columbia Insurance Company (“Columbia”), on the basis that Columbia’s Public Officials Liability policy at issue does not afford coverage for the Plaintiffs’ alleged damages. For the following reasons, we agree and affirm the trial court’s judgment.
 

 In April 2006, the Plaintiffs filed suit against Plaquemines Parish Government (“PPG”) for damages that occurred in the parish due to flooding during and after Hurricane Katrina.
 
 [2]
 
 All of the damages alleged by the Plaintiffs were caused either directly by flooding, or indirectly as a consequence of flooding. Specifically, the Plaintiffs’ suit seeks compensation for individuals and business enterprises located on the east bank of Plaquemines Parish who suffered property |2damage, loss of use of property, and emotional distress as a result of the failure of “hurricane protection levees” built by PPG. According to the Plaintiffs, the hurricane protection levees failed as a result of years of neglect by PPG.
 

 On 4 November 2009, the Plaintiffs, by way of an amending petition, added Columbia as a defendant as one of PPG’s liability insurers. Columbia issued a “claims-made-and-reported” Public Officials Liability Policy to PPG with a policy period from 26 February 2006 to 26 February 2007, which provided coverage for employment discrimination and wrongful discharge claims, in addition to certain ministerial wrongful acts that do not result in bodily injury, personal injury, or property damage.
 
 [3]
 

 Columbia moved for summary judgment on the grounds that (1) no claim was timely made or reported to Columbia during the policy term triggering coverage; and, (2) even if timely reported, the policy excludes coverage for the damages alleged by Plaintiffs. While pretermitting resolution of Columbia’s first grounds for summary judgment, the trial court agreed that Columbia’s policy does not provide coverage for any of the damages and injuries alleged by the Plaintiffs to have been caused by PPG’s negligence and, therefore, granted Columbia’s motion for summary judgment on 8 June 2010 dismissing the Plaintiffs’ claims against it. It is from this judgment that the Plaintiffs have appealed.
 

 The Plaintiffs raise three issues on appeal: (1) whether Columbia’s Public Officials Liability policy issued to the PPG provides coverage for any of the items of damages allegedly sustained by the Plaintiffs as a result of the negligence of the
 
 *316
 
 |3PPG as pled in the Plaintiffs’ Master Petition; (2) whether the “claims made and reported” provision of Columbia’s policy is against public policy and, therefore, unenforceable under Louisiana law as against third parties due to the defendant insured’s failure to timely notify its insurer of a claim under the “Claims-Made” policy; and (3) whether summary judgment was prematurely pled and granted under the circumstances of this case.
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.
 
 R.J. Messinger, Inc. v. Rosenblum,
 
 03-2209, p. 5 (La.App. 4 Cir. 5/11/05), 904 So.2d 760, 764. Summary judgment is favored and shall be construed “to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966 A(2). It is well-settled that a motion for summary judgment is properly granted “if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). “Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy ... under which coverage could be afforded.”
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1183.
 

 The Plaintiffs aver the trial court erred in concluding that Columbia’s Public Official Liability policy issued to the PPG does not provide coverage for the intangible losses they claim. We disagree. The trial court was correct in determining that Columbia’s policy does not provide coverage for the intangible losses allegedly sustained by the Plaintiffs as a consequence of damage to their 1 ¿residences, commercial properties, and personal belongings resulting from flooding due to the failure of the hurricane protection levees built by the PPG.
 

 Interpretation of an insurance policy generally involves a legal question which can be resolved properly in the framework of a motion for summary judgment.
 
 Bonin v. Westport Ins. Corp.,
 
 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code.
 
 Hebert v. Webre,
 
 08-0060, p. 4 (La.5/21/08), 982 So.2d 770, 773. The Louisiana Civil Code provides that “[[Interpretation of a contract is the determination of the common intent of the parties.” La. C.C. art. 2045. The parties’ intent, as reflected by the words of the policy, determine the extent of coverage.
 
 Id.; Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co.,
 
 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. An insurance contract must be “construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.” La. R.S. 22:881.
 

 Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd consequence.
 
 Interstate Fire,
 
 630 So.2d at 763. “When the words in the policy is clear, unambiguous, and explicit and lead to no absurd conse
 
 *317
 
 quences, courts must enforce the contract as written.”
 
 Succession of Fannaly v. Lafayette Ins. Co.,
 
 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1137. Where, |showever, an insurance policy includes ambiguous provisions, the “[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.”
 
 Interstate Fire,
 
 p. 6, 630 So.2d at 763 (citing La. C.C. art.2050). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049.
 

 If, after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
 
 Interstate Fire,
 
 p. 6, 630 So.2d at 764. In case of doubt that cannot be otherwise resolved a provision in a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. C.C. art. 2056. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer.
 
 Cadwallader v. Allstate Ins. Co.,
 
 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. This strict construction principle applies only if the ambiguous provision is susceptible to two or more
 
 reasonable
 
 interpretations; for the rule of strict construction to apply, the insurance policy must not only be susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
 
 Id.
 
 The fact that a term is not defined in the policy itself does not alone make that term ambiguous.
 
 Id.,
 
 p. 4, 848 So.2d at 581;
 
 see also Am. Deposit Ins. Co. v. Myles,
 
 00-2457, p. 7 (La.4/25/01), 783 So.2d 1282, 1287.
 

 It is equally well-settled that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so lfilong as the limitations do not conflict with statutory provisions or public policy.
 
 Reynolds,
 
 p. 3, 634 So.2d at 1183. Asstated by the Supreme Court in
 
 Commercial Union Ins. Co. v. Advance Coating Co.,
 
 351 So.2d 1183, 1185 (La.1977), quoting
 
 Muse v. Metropolitan Life Ins. Co.,
 
 193 La. 605, 192 So. 72 (1939):
 

 The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, not does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties....
 

 With these often repeated principles in mind, we proceed to interpret the Columbia policy at issue herein.
 

 The Public Officials Liability policy issued by Columbia to the PPG is a “claims-made-and-reported” policy, which primarily provides coverage for claims arising from employment practices such as employment discrimination or wrongful discharge claims, libel, and slander, in addition to certain ministerial wrongful acts.
 
 [4]
 
 The policy terms obligated Columbia to:
 

 
 *318
 
 [P]ay those sums that the insured becomes legally obligated to pay as compensatory civil damages arising out of a “wrongful act” to which this insurance applies.
 

 Columbia’s policy then sets forth those claims for which the policy does not provide coverage:
 

 2. Exclusions
 

 This insurance does not apply to:
 

 a.Any “claim” for “bodily injury”, “property damage” or “personal injury.”
 

 17Section VI of Columbia’s policy defines bodily injury, personal injury, and property damage:
 

 1. “Bodily Injury” means bodily injury, sickness, disease, emotional distress or mental anguish sustained by a person, including death and any consequential injury resulting from any of these at any time.
 

 6. “Personal Injury” means injury or alleged injury, including emotional distress, mental anguish or any consequential injury arising out of one of more of the following:
 

 a. False arrest, assault and battery, detention or imprisonment;
 

 b. Malicious prosecution, abuse of process or defamation;
 

 c. The wrongful eviction of a person by another person or organization from, or the wrongful entry into, a room, dwelling or premises that the person occupies, or other violation of the right of private occupancy;
 

 d. Oral, written, televised or videotaped publication of material that
 

 defames, slanders or libels a person or organization or discharges a person’s or organization’s good, products or services;
 

 e. Oral, written, televised, or videotaped publication of material that violates a person’s right of privacy; or
 

 f. Advertising, broadcasting, telecasting, or videotaping activities conducted by or on behalf of any insured.
 

 7. “Property damage” means:
 

 a. Physical injury to, or criminal abstraction of, tangible property, including all resulting loss of use, or resulting reduction in value of that property; or
 

 b. Loss of use, or reduction in value, or tangible property that is not physically injured or criminally abstracted.
 

 The Plaintiffs first argue that Columbia’s policy provides coverage for their claims of nonfeasance against the PPG for neglecting the maintenance of the hurricane protection levee systems on the east bank of Plaquemines Parish as the RPPG’s negligence constitutes a wrongful act as that term is defined in Columbia’s policy.
 
 [5]
 
 Contrary to the Plaintiffs’ argument, Columbia does not contend, nor did the trial court find, that the alleged acts of negligence committed by the PPG fall outside the policy’s definition of “wrongful acts.” Rather, Columbia argued, and the trial court agreed, that the damages the Plaintiffs claimed to have sustained as a result of PPG’s alleged wrongful acts are unam
 
 *319
 
 biguously excluded from the policy. We agree.
 

 Columbia’s policy expressly excludes coverage for any damages consisting of bodily injury, personal injury, or property damage. The Plaintiffs aver, however, that the exclusion upon which Columbia relies does not expressly exclude losses to “intangible property” and “intangible property rights,” and thus, as exclusions must be expressly stated to have an effect, the exclusion relied on should not apply to their claims for various forms of consequential damages, which include: stigma, inconvenience, loss of enjoyment, loss of business income, increased costs of insurance, and increased deductibles. An insurer must expressly and specifically exclude a particular loss or claim from coverage, so that “ ‘[a]ny exclusion from coverage in an insurance policy [is] clear and unmistakable.’ ”
 
 Roger v. Estate of Moulton,
 
 513 So.2d 1126, 1130 (La.1987). That an exclusion could have been worded more explicitly, however, does not necessarily deem it ambiguous.
 
 See Interstate Fire,
 
 630 So.2d at 766 (“[T]hough ... the Interstate policy could have more clearly delineated its payment obligation, ‘that fact does not mandate the conclusion that the policy was legally ambiguous.’ ”)
 

 19In short, the Plaintiffs argue that because Columbia could have more explicitly excluded losses to intangible property but did not, their failure to do so results in coverage for the intangible property losses they claim. The trial judge did not agree with this contention and neither do we.
 
 All
 
 damage to or destruction of tangible property, such as a residence or business, is excluded from coverage, and we find that such necessarily includes those losses enumerated by the Plaintiffs. Specifically, we find that all of the Plaintiffs’ alleged intangible property losses were caused by flood water damage sustained to their homes, businesses, and personal belongings,
 
 ie.
 
 damages to
 
 tangible property,
 
 and/or constitute a resulting loss of use or resulting reduction in value of that tangible property, which is unambiguously excluded from coverage under Columbia’s policy. We agree with Columbia that “stigma” damage is nothing more than a “reduction in value” of the tangible property; “loss of enjoyment” is merely a component of “loss of use;” and, “loss of business income” is the measure of damages for the “loss of use” of commercial property. Regarding recovery for damages consisting of increased insurance premiums and/or increased insurance deductibles, we agree with our brethren on the First, Third and Fifth Circuits that, as a matter of policy, in Louisiana, the established limitations on the extent of damages for which a tortfeasor is liable encompasses the recovery of increased insurance premiums and deductibles.
 
 See Nikolaus v. City of Baton Rouge/Parish of East Baton Rouge,
 
 09-2090, pp. 5-6 (La.App. 1 Cir. 6/11/10), 40 So.3d 1244, 1248;
 
 Louisiana Swabbing Service, Inc. v. Enterprise Products Co.,
 
 00-1161, p. 3 (La.App. 3 Cir. 5/2/01), 784 So.2d 862, 865;
 
 Severn Place Associates v. American
 

 Bldg. Services, Inc.,
 
 05-859, p. 8 (La.App. 5 Cir. 4/11/06), 930 So.2d 125, 129. Even if we were to determine that increased insurance premiums and deductibles were recoverable losses in Louisiana, we find that these losses are simply another way to measure the property’s loss of value.
 

 Further, we find the cases cited by Columbia, which include decisions interpreting similar exclusionary language in Public Official Liability policies issued to governmental entities responsible for flood protection indicating that such policies do not cover bodily injury or property damage caused directly or as a consequence of flooding, to be instructive. In
 
 In re Katri
 
 
 *320
 

 na Canal Breaches Consolidated Litigation,
 
 2008 WL 4091033 (E.D.La.2008), the court considered whether a similar Public Official Liability policy issued to East Jefferson Levee District by National Union Fire Insurance Company provided coverage for certain bodily injury and property damage allegedly sustained by the plaintiffs in those consolidated class actions. Similar to the Columbia policy at issue herein, National Union’s policy was a claims-made-and-reported policy with exclusions for bodily injury and property damage. Ruling the exclusions to be unambiguous and enforceable, the court stated:
 

 Simply put, [the bodily injury and property damage exclusionary] provision is not susceptible to two different interpretations. While these provisions certainly greatly restrict the coverage provided under the policy of insurance, the Court is constrained to apply its terms as written.
 

 In re Katrina,
 
 2008 WL 4091033, p. 8.
 

 In
 
 Chicago Property Interests v. Broussard,
 
 08-526 (La.App. 5 Cir. 1/13/09), 8 So.3d 42, which dealt with a similar Public Officials and Employees Liability policy with National Union Fire Insurance Company of Pittsburgh, PA, |nthe plaintiffs sought recovery for damages, including increased living expenses, displacement costs, loss of income, lost profits, lost business opportunities, and inconvenience. Exclusion (d) of the policy excluded damages for bodily injury and property loss. The plaintiffs argued that Exclusion (d) was illusory since it essentially excluded all people and all things from any coverage whatsoever. The court, while not unmindful of the fact that the policy provided coverage for a “seemingly minute variety of ‘Wrongful Acts’ by public officials,” opined that one category of damages that would arguably not be excluded by National Union’s policy would be purely economic damages:
 

 For example, were the plaintiffs to allege that the parish president arbitrarily and capriciously failed to reopen the parish after public services had been restored, the plaintiffs could argue that they suffered a loss of business opportunity, assuming that they suffered no property damage.
 

 Chicago Property,
 
 08-526, pp. 10-11, 8 So.3d at 49. Accordingly, the appellate court affirmed the trial court’s grant of summary judgment concluding that the plaintiffs’ damages were excluded from coverage.
 
 Id.
 

 In
 
 Winesberry v. West Jeff. Levee District,
 
 620 So.2d 385 (La.App. 5 Cir.1993), a case arising out of flood damages occurring as a result of Hurricane Juan, property owners sued the Levee District’s public officials liability insurer for property damages including “loss of resale value” of their homes. The policy, similar to Columbia’s in the instant case, also excluded coverage for property damage defined as “damage or destruction of any tangible property including loss of use thereof.” The plaintiffs argued that because the policy’s definition of property damage did not specifically enumerate loss of resale value, then such losses were not excluded. After reviewing the policy, the court rejected the | ^plaintiffs’ argument and determined that the property damage exclusion excluded coverage for all the damages claimed by the plaintiffs, including the claims for loss of resale value:
 

 All
 
 damage to or destruction of tangible property, such as a residence, is excluded from coverage, and that would necessarily include loss of resale value.
 

 Winesberry,
 
 620 So.2d at 388.
 

 We agree with the rulings of the
 
 In re Katrina, Chicago Property,
 
 and
 
 Winesberry
 
 courts and hold that, in the instant
 
 *321
 
 ease, the Columbia policy excludes coverage for
 
 all
 
 intangible losses claimed by the Plaintiffs as these damages emanated from or resulted as a consequence of the injury to the Plaintiffs’ tangible property (which is expressly excluded from coverage). In short, without injury to the Plaintiffs’ residences, businesses, and personal belongings (tangible property) due to flooding when the levees were breached, the Plaintiffs would not have sustained any resulting stigma, inconvenience, loss of enjoyment, increased premiums and/or deductibles and/or loss of business income damages (intangible property) as they claim.
 

 We further find no merit in the Plaintiffs’ argument their alleged “emotional, psychological, and intellectual injuries” are not excluded because these alleged claims do not specifically fall within the policy’s definition of excluded “personal property.” We find that these injuries, if experienced, emanated as a result of the damage to Plaintiffs’ property caused by flooding in Hurricane Katrina. Consequently, we find these claims are also excluded under the policy’s definitions of the “bodily injury” and “property damage” exclusions.
 

 In their remaining two assignments of error, the Plaintiffs contend that the “claims-made-and-reported” provision of Columbia’s policy violates Louisiana 11slaw and is unenforceable, and that Columbia’s motion for summary judgment was filed prematurely because the Plaintiffs were not given enough time to complete discovery on this particular issue. In its written Reasons for Judgment, the trial court stated:
 

 In the interest of thoroughness, if this matter were to be decided based on the “claims made and reported issue,” the Court would probably defer action of this exception and allow Plaintiffs time for further discovery. However, the Court is of the opinion that this exception should be decided based on the coverage issue....
 

 Because the trial court obviously preter-mitted consideration of the “claims made and reported” issue, we agree with Columbia that this issue is not properly before us on appeal and we are, therefore, precluded from addressing it. This assignment of error is without merit.
 

 Regarding the Plaintiffs’ contention that there was insufficient discovery to support the trial court’s granting of summary judgment in favor of Columbia, we disagree. The trial court granted summary judgment in favor of Columbia solely on the basis that the claims asserted by the Plaintiffs were excluded from coverage under the terms of the policy issued by Columbia to PPG. Whether the policy unambiguously excludes coverage for the damages claimed is solely a question of law to be decided from the four corners of the policy and is therefore appropriate for summary disposition.
 
 See Peterson v. Schimek,
 
 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029;
 
 see also
 
 La. C.C.P. art. 966 A(1). The Plaintiffs’ argument that additional discovery was needed relates to their proposed issue of the enforceability of the “claims-made-and-reported” provision of Columbia’s policy, an issue preter-mitted by the trial court. No additional discovery by the parties was needed in order for the trial court to resolve the purely legal issue of coverage 114under Columbia’s policy. Consequently, this assignment of error is also without merit.
 

 CONCLUSION
 

 Columbia’s motion for summary judgment was properly granted. No genuine issue of material fact as to coverage exists. A comprehensive review of the Plaintiffs’
 
 *322
 
 original, supplemental, and class action petitions reveals that every category of damages the Plaintiffs allege directly or indirectly had its origin in the passage of Hurricane Katrina and the subsequent tangible property damage and bodily harm allegedly suffered by the Plaintiffs. For example, if a putative plaintiff suffered a loss of business income or stigma, it was because his personal or commercial property was directly or indirectly damaged in the flood that followed Hurricane Katrina. We conclude that the plain, ordinary interpretation of the wording set forth in Exclusion (a) of Columbia’s policy and the definitions for “bodily injury” and “property damage” are sufficient to unambiguously exclude all of the damages alleged by the Plaintiffs, including emotional distress, inconvenience, stigma, increased insurance costs and deductibles, loss of business income, and loss of enjoyment. We find the Plaintiffs failed to point to any specific element or item of their claimed damages resulting from the negligence of the PPG that would be covered under the terms and conditions of Columbia’s policy.
 

 AFFIRMED.
 

 [1]
 

 .These five Plaintiffs suing individually, and on behalf of the proposed class, were substituted for the original plaintiff, Melvin J. Bur-master, who is also counsel in this matter. The Plaintiffs are putative class members suing for injuries caused by flooding that occurred in Plaquemines Parish during and in the aftermath of Hurricane Katrina, and thereafter, by re-flooding due to Hurricane Rita. The proposed class members allegedly sustained property damage and bodily injuries as a result of the failure of the hurricane protection system.
 

 [2]
 

 . Various supplemental and amended petitions have been filed during the course of this litigation, which among other things, added class allegations. To date, a class has not been certified.
 

 [3]
 

 . Examples of these ministerial acts include: unlawful or arbitrary zoning decisions, improperly awarding or failing to award public contracts, and violations of public bid laws or procedures.
 

 [4]
 

 . Examples of ministerial wrongful acts afforded coverage under Columbia’s policy include unlawful or arbitrary zoning decisions, violations of public bid laws, et cetera, that do not result in bodily injury, personal injury, or property damage.
 

 [5]
 

 . Columbia’s policy, Section VI — Definitions, defines "wrongful act,” in pertinent part, as "any actual or alleged error or misstatement or act or omission or neglect or breach of duty, including misfeasance and nonfeasance, by the individual insureds in the discharge of their duties with the "public entity,” individually or collectively, or in any matter to which this insurance applies claimed against them solely by reason of their having been duly elected or appointed officials....”