ARMSTRONG, Judge.
Third-party defendant America First Insurance Company, appeals the trial court’s denial of its motion for summary judgment seeking its dismissal as a third-party defendant. It further appeals the trial court’s granting State Farm’s motion for summary judgment finding that America First provided coverage for plaintiff’s loss, that its policy was primary and that there was no concurrent coverage by State Farm.
On August 29, 1983, William E. Deblanc purchased a 28-foot Chris Craft Cruiser from Dr. M.B. Casteix, Jr. and named the boat “The Amanda”. Following Mr. De-blanc’s purchase of the boat, he purchased an Onan generator and William Deblanc with the assistance of Bernard Brondum installed the generator on The Amanda. On October 5, 1984, a condition and evaluation survey was performed by Wendell Collins, a marine surveyor with Deep-Sea Marine Surveyors and Consultants, Inc., for the purpose of determining the physical condition of the vessel and its value. On August 3, 1986, Dennis Laborde purchased The Amanda from William Deblanc for the sum of $13,000.00.
On August 31, 1986, Dennis Laborde went on an overnight fishing trip with his sons, Martin and Stacy Laborde, and Dennis Laborde’s brother-in-law, Alan L. Hebert, and Mr. Hebert’s 22 year old son, Alan J. Hebert. During the night of August 31, 1986 and in the morning of September 1, 1986 while The Amanda was *59 anchored in the navigable waters of the Fort Bayou Pass Area of Plaquemine Parish, the generator was operated to power the boat’s air conditioning system. Allegedly at some point, while the generator was operating, carbon monoxide fumes from the generator leaked out of the exhaust system. As a result of inhaling carbon monoxide fumes, Martin Laborde and Alan J. Hebert died. Dennis Laborde and Stacy Laborde also allegedly suffered personal injury.
On July 31, 1987, plaintiff brought this suit against the defendants, William E. De-blanc, his wife Donna, their insurer, State Farm Insurance Company, Deep-Sea Marine Surveyors and Consultants, Inc., Wendell Collins, Bernard Brondum, and the Onan Corporation.
Almost two years after the original lawsuit was filed, State Farm filed a third-party demand against America First Insurance Company, incorrectly designated as First of Georgia Insurance Company, alleging that First of Georgia was the homeowner’s insurer of the defendants, William E. and Donna Deblanc, as of the date of the occurrence, and that they should respond for this claim.
On December 1, 1989, America First Insurance Company filed a motion for summary judgment seeking dismissal of the third-party demand of State Farm, as well as any subsequent demands which were filed including those by the Labordes and Deblancs. Opposition was filed by the La-bordes, the Deblancs, and State Farm. On May 16, 1990, the trial court denied America First’s motion for summary judgment.
On August 23, 1990, State Farm filed a motion for summary judgment seeking to have the court declare that America First Insurance Company provided coverage for this loss and in addition thereto, the amount of that coverage and the priority ranking between America First and State Farm, in the event that coverage was found.
The trial court granted State Farm’s motion on October 3, 1990 holding America First did provide coverage, that its policy was primary and that State Farm’s umbrella policy would not be applicable to this loss until exhaustion of the $300,000.00 liability limit provided by the America First policy.
Subsequently the parties entered into a settlement agreement which stipulated that liability would be assessed against the De-blancs and State Farm paid the Labordes $300,000.00.
By its first assignment of error, America First argues that the homeowner’s policy it issued to the Deblanc’s specifically excluded coverage for any watercraft. Therefore, it was error for the trial court to find that its policy provided coverage for this cause of action.
The pertinent language in the policy reads: “personal liability coverage does not apply to bodily injury claims ‘arising out of’ the ownership, maintenance, or use of any watercraft owned or rented by the insured.” “ ‘Arising out of’ implies an element of causality though not necessarily the proximate cause.” Speziale v. Kohnke, 194 So.2d 485 at 488 (La.App. 4th Cir.1967), writ refused 250 La. 469, 196 So.2d 534 (La.1967).
The court in Louisiana Insurance Guaranty Association v. Gugliemo, 276 So.2d 720 (La.App. 1st Cir.1973), writ refused 279 So.2d 690 (La.1973), held that the term “arising out of” relates not to verb tense or the time that the claim arises, but rather to the source and nature of the claim. America First goes on to cite several worker’s compensation cases that articulate this same proposition including Laugharn v. Savoie, 480 So.2d 325 at 327 (La.App. 4th Cir.1985), writ denied 481 So.2d 1337 (La.1986) and Reid v. Gamb, 509 So.2d 995 (La.1987).
In Watson v. Town of Arcadia, 542 So.2d 1168 (La.App. 2d Cir.1989), writ denied 548 So.2d 1234 (La.1989), the court was faced with a wrongful discharge claim asserted by a former town employee. Made additional defendant and third-party defendant by the Town of Arcadia was General Agents Insurance Company of North America, Inc., the town liability insurer. General Agents moved for sum *60 mary judgment pleading that its policy excluded coverage for the damages sustained by the plaintiff because the basis for the claim arose out of the course and scope of her employment. Both the plaintiff and the City argued that the damages sustained by the plaintiff were all damages subsequent to her wrongful discharge and that as such, those damages should not be excluded from the liability insurer’s coverage. Plaintiff claimed that the attorney’s fees in connection with the wrongful discharge, her humiliation, her mental anguish, and her embarrassment all took place when she was no longer an employee of the City.
The court held that the only act of the town that was factually material to the coverage issue was the wrongful discharge. The town did not commit any other acts either before or after the discharge which would give rise to liability on the part of the town. The court held that the plaintiff’s status as an employee at the time that she was discharged was the occurrence which precipitated her alleged injuries and was dispositive of the cause of action. The court went on to hold that all damages for the alleged wrongful discharge clearly arose out of her employment and that accordingly, the resulting injuries and damages were directly, or indirectly, related to the employment of the plaintiff and thus the exclusionary language of the policy would apply.
Accordingly, this court must look to the occurrence which precipitated the damages as being dispositive. In this case, all damages arise out of Mr. Deblanc’s ownership of the watercraft. Had Mr. Deblanc never owned The Amanda, he would not have had the generator installed on the watercraft, would not have sold the watercraft to the Labordes, and the Laborde’s would not have a claim against him for these damages. All losses were derivative of Mr. Deblanc’s ownership of The Amanda.
The policy excludes claims arising out of the ownership, the maintenance, use, loading or unloading of a watercraft; the clear intent is to exclude a much broader range of claims with the common denominator being that the activities are derivative of a boat that at some point in time was owned by the insured. It would not seem to exclude casual use of another’s boat. However, if the insured owned a boat, there are more chances for incidents to occur that would expose an insurer to claims and that is why the insurer asks that the insurer advise them of the potential risks so that the same can be covered by issuing the proper policy and charging the appropriate premiums.
The most analagous case First America cites is Moreau v. Sanders, 415 So.2d 562 (La.App. 3d Cir.1982), writ denied 420 So.2d 444 (La.1982). Plaintiff was suing for personal injuries received in a boating accident. A homeowner’s policy excluded “bodily injury or property damage arising out o/the ownership, maintenance, operation, use, loading, or unloading of any watercraft ... powered by outboard motors of more than 5 horsepower. If such outboard motor is owned by any insured at the inception of this policy and not endorsed hereon, unless the insured reports in writing to this company within 45 days after acquisition his intention to insure the outboard motor, ownership of which was required prior to the policy term.”
The defendant/insured argued the exclusion was not applicable and coverage should not be excluded, since the boat was not owned at the inception of the policy. The court found each renewal of the homeowner’s policy was a new contract, so when renewal took place in 1979, the parties entered into a new contract and the boat was owned at the inception of that policy. The court also stated, “the plain intention of parties to an insurance contract is to provide coverage for those risks which are agreed to and for which premiums are paid. It would be unreasonable and impractical to find that the insurance company agreed to cover a boat and motor it didn’t know existed and for which it received no premi-ums_ the insured cannot expect coverage he did not bargain for.” Moreau v. Sanders, id at 564.
America First argues that although Mr. Deblanc never paid for watercraft coverage *61 with America First, he did pay for coverage with State Farm, specifically with a boat-owner’s policy at the time he still owned The Amanda, and under an umbrella policy. A homeowner’s policy is not a boatowner’s policy. Nor is it an automobile policy. That is why Mr. Deblanc purchased separate homeowner’s policies, separate boat-owner’s policies, separate automobile policies and a separate umbrella policy. Each policy provided coverage for a specific risk known by the insurer for which premiums are received.
State Farm points out that the homeowner’s policy issued by America First provided comprehensive personal liability insurance under Section II. State Farm argues that the language used to exclude coverage for bodily injury claims arising out of the ownership, maintenance or use of any watercraft owned or rented by the insured is not applicable to The Amanda or, at best, is ambiguous. Regardless of what America First intended the language to mean, if ambiguous it must be construed to provide coverage to the insured.
State Farm further argues that in this instance the homeowner’s policy is applicable because The Amanda does not fit into the four enumerated categories of watercraft excluded from the personal liability coverage provided in the policy. State Farm maintains that the exclusion is restricted to these four categories. Therefore The Amanda should be covered. State Farm relies on Employers Mutual Liability Insurance Company of Wisconsin v. Michigan Mutual Auto Insurance Company, 101 Mich.App. 697, 300 N.W.2d 682 (1980) as precedent.
The Michigan court applies the reasoning that State Farm advocates and we decline to follow it. This seems an unreasonable interpretation of the policy. The four categories appear to be defining what constitutes “ownership, maintenance, use, loading or unloading of a watercraft” rather than restricting the exclusion to those enumerated categories. The contingency that America First is being asked to provide coverage for, bodily injury resulting from the former ownership and alteration of a watercraft, is one the policy did not contemplate. It is no wonder the policy did not contemplate this risk since it is highly remote. We believe the overall intent of the policy was to exclude watercrafts as a risk of liability.
State Farm further argues that the source and nature of this claim is the “use of the generator” and not the “use of the boat”. However, you cannot argue that an integrally related component part of the boat was the cause of an accident and disregard the entirety of the boat. We agree with America First that the homeowner’s policy it issued to the Deblanc’s specifically excluded watercraft as a risk of liability and it was error for the trial court to find that policy primary under these facts.
By its second assignment of error, America First argues that State Farm had in effect at all material times relevant to this litigation an umbrella policy issued to the Deblancs. That umbrella policy has personal liability limits of $1,000,000.00. Such umbrella policies are applicable to liability arising from the ownership of property and are in excess over and above any primary coverage which may have been in effect at the time the negligent act occurred. Coates v. North Lake Oil Company, 499 So.2d 252 (La.App. 1st Cir.1986), writ denied 503 So.2d 476 (La.1987). If no collectible primary insurance is available, the umbrella policy then becomes primary. Nasello v. Transit Casualty Company, 530 So.2d 1114 (La.1988). America First argues that even though the America First Insurance Company policy is not applicable to the loss and even though the State Farm boatowner’s policy written on The Amanda allegedly lapsed after the sale, but prior to the loss, the State Farm umbrella policy provided coverage during all pertinent times hereto.
State Farm moved for summary judgment, and the court so granted, on the issue that both the homeowner’s policy and the boatowner’s policy on The Amanda issued to the Deblancs had been cancelled prior to the occurrence giving rise to this litigation. (The Deblancs presently have a *62 boatowner’s policy with State Farm on another watercraft.) This being the case, State Farm maintains that its duty to the insured was that of an excess insurer on the basis of the umbrella policy it provided. State Farm points out that in its “Declarations” provision it states that underlying insurance is required. However the declaration goes on to state that underlying insurance is required for “all land motor vehicles or watercraft owned by, rented by, or regularly furnished to you.” It does not mention watercraft the insured formerly owned and altered. This would appear to be an unforseen risk, not contemplated by any policy. Thus, coverage would exist under the umbrella policy. Because no valid, collectible, underlying insurance exists, the umbrella policy becomes primary.
Having concluded this, we need not address America First’s final assignment of error, whether the trial court should have found that a concurrent insurance situation exists. State Farm’s umbrella policy becomes primary for the full extent of liability or $300,000.00.
For the foregoing reasons, we reverse the judgment of the trial court.
REVERSED AND RENDERED.