Count 3: Failure to Properly Spend Insurance Funds under the Louisiana Condominium Act
24.
Under La. R.S. 9:1123.112(G), if the condominium is not repaired or replaced after a fire (when one of the three exclusive criteria of La. R.S. 9:1123.112(G) occur), a statutory formula directs how the insurance money must be spent.
* * *
27.
The Association violated La. R.S. 9:1123.112(G)'s statutory formula to the extent it used more of the insurance funds on the common elements than the insurance company had attributed in its payment. In that case, it necessarily violated La. R.S. 9:1123.112(G)'s statutory formula again.
28.
Any failure to properly spend insurance proceeds in accordance with La. R.S. 9:1123.112(G) renders the Association liable to Mr. Forrest (in his capacity as Trustee) for the difference between the insurance company's attribution of funds and what the Association later set aside for the unit's repair.[3 ]
Afterwards, the Association filed a third party demand against Travelers. Travelers had issued to the Association a Community Association Management Liability Coverage Policy (the "Management Policy") that provided coverage for losses incurred due to directors and officers' alleged wrongful acts. The Association reported the Trust's claims to Travelers; Travelers denied coverage, including the duty to defend.
In September 2017, the Association moved for a summary judgment against Travelers, requesting its third party demand be granted on the ground that there was coverage under the Management Policy. In October 2017, Travelers moved for a summary judgment seeking dismissal of the Association's third party demand arguing that coverage was excluded under the policy, and Travelers had no duty to defend the Association. A hearing on the motions was held on November 17, 2017. On December 7, 2017, the district court denied the Association's motion for summary judgment, and granted Travelers' motion for summary judgment, dismissing with prejudice all claims against Travelers. The Association, pursuant to La. C.C.P. art. 966(C)(4), requested written reasons for judgment which were provided by the district court.[4] In its written reasons, the district court found that coverage for the Trust's claims was excluded as "[t]he policy *1068 contains a clear and unambiguous exclusion precluding coverage 'for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving' property damage."
From this judgment, the Association seeks review.
DISCUSSION
The Association asserts the district court erred by dismissing the third-party demand and granting Travelers' motion for summary judgment. In challenging the district court's judgment, the Association assigns two errors: (1) the district court erred in finding the Management Policy unambiguously excluded coverage for the Trust's claims; and (2) the district court erred in failing to find Travelers had the duty to defend the Association against the Trust's claims as required by the Management Policy.
"A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant." Tate v. Touro Infirmary , 17-0714, p. 1 (La. App. 4 Cir. 2/21/18), --- So.3d ----, ----, 2018 WL 992322,[5] writ denied , 18-0558 (La. 6/15/18), 245 So.3d 1027 (citing La. C.C.P. art. 966(A)(1) ). An appellate court's review of summary judgments is de novo , and it employs the same criteria district courts consider when determining if a summary judgment is proper. Madere v. Collins , 17-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1147 (citing Kennedy v. Sheriff of E. Baton Rouge , 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686 ). In Chanthasalo v. Deshotel , 17-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 (quoting Ducote v.Boleware , 15-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So.3d 934, 939, writ denied , 16-0636 (La. 5/20/16), 191 So.3d 1071 ), this Court espoused:
This [de novo ] standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law.... A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
"Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment." Thebault v. Am. Home Assur. Co. , 15-0800, p. 5 (La. App. 4 Cir. 4/20/16), 195 So.3d 113, 116 (citing Bonin v. Westport Ins. Corp. , 05-0886, p. 4 (La. 5/17/06), 930 So.2d 906, 910 ). In the case sub judice , Travelers, the insurer, has the burden of proving that a claimed loss fell within the policy exclusion. Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc. , 06-1827, p. 6 (La. 5/22/07), 958 So.2d 634, 639 (citation omitted).
Property Damage Exclusion
In the case sub judice , there are no factual issues in dispute, only a legal question-whether the Management Policy excluded coverage of the Trust's claims against the Association.[6]
*1069 This Court explained in Burmaster v. Plaquemines Parish Government , 10-1543, p. 4 (La. App. 4 Cir. 3/30/11), 64 So.3d 312, 316, (citation omitted), that "[a]n insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code." The extent of coverage is determined by "[t]he parties' intent as reflected by the words in the policy," and "[s]uch intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co. , 93-0911 (La. 1/14/94), 630 So.2d 759, 763 (citations omitted)(footnote omitted). "An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another." Pareti v. Sentry Indem. Co. , 536 So.2d 417, 420 (La. 1988) (citation omitted). In Doerr v. Mobil Oil Corp. , 00-0947, p. 6 (La. 12/19/00), 774 So.2d 119, 124,[7] the Supreme Court, citing La. C.C. art. 2046, held that the "Civil Code is clear that if a contract does not lead to absurd consequences it will be enforced as written." Additionally, "courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language." Pareti , 536 So.2d at 420 (citations omitted). On the other hand, any ambiguity in a policy "should be construed in favor of the insured and against the insurer. Id. If an insurance policy provision is amenable to two or more reasonable interpretations, "it is considered ambiguous and must be liberally construed in favor of coverage." Chicago Prop. Interests, L.L.C. v. Broussard , 08-526, p. 7 (La. App. 5 Cir. 1/13/09), 8 So.3d 42, 47 (citation omitted). This Court, in Burmaster , 10-1543, at p. 8, 64 So.3d at 319 (citation omitted) opined, that although an exclusion could have been worded more explicitly, it "does not necessarily deem it ambiguous." Likewise, insurers can limit their liability absent a conflict with statutory provisions or public policy. Pareti , 536 So.2d at 421 (citations omitted).
The Management Policy issued by Travelers to the Association was a claims-made-reported policy. "Insured Person" was defined in the Management Policy and provided in pertinent part:
[D]uly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors, or a functional equivalent thereof, member of a duly constituted committee, or volunteers of the Insured Entity or any Executive Officer . Insured Person also means any Community Association Management .
The Management Policy provided general coverage for "Loss for Directors and Officers Wrongful Acts." "Directors and Officers Wrongful Act" was defined in section "N" of the policy as:
1. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, including any Personal Injury or Publishers Liability , or any matter asserted against, an Insured Person in his or her capacity as such;
2. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, including any Personal Injury or *1070 Publishers Liability , the Insured Organization ; or
3. any matter asserted against an Insured Person solely by reason of his or her status as such.
Loss was defined, in part, as "[D]efense Expenses and money which an Insured is legally obligated to pay as a result of a Claim , including compensatory damages, punitive or exemplary damages where insurable under applicable law, prejudgment and postjudgment interest, judgments, and settlements." Defense Expenses were defined as "reasonable and necessary legal fees expenses incurred by the Company or the Insured, with the Company's consent, in the investigation, defense, settlement and appeal of a Claim ...." The property damage exclusion of the Management Policy, Exclusion A.1, provided:
The Company will not be liable for Loss for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any damage to, destruction of, deterioration of, loss of, or loss of use of any tangible property, including any Construction Defect , whether or not as a result of inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.
"Claim" was generally defined in section "F" as a "Directors and Officers Claim" and "Directors and Officers Claim" was defined in section "M," in part, to include "a written demand for monetary or non-monetary relief [ ]" or "a civil proceeding commenced by service or a complaint or similar pleading" "against an Insured for any Director and Officers Wrongful Act ."
First, the Association contends the "overall basis" of the property damage exclusion is to exclude "construction defects," and the Trust does not assert any claims of construction defects. We find this interpretation of the exclusion is flawed. A plain reading of the property damage exclusion reveals "construction defect" is just one type of property damage barred by the exclusion; the exclusion includes "any damage to , destruction or deterioration of, loss of, or loss of use of any tangible property , including any Construction Defect ...." (emphasis added). This claim lacks merit.
Secondly, the Association asserts several arguments in support of its position that the district court erred in finding the Management Policy "unambiguously excluded coverage" of the Trust's claims. In brief, the Association contends that the property damage exclusion is ambiguous, and particularly, the "arising out of" language contained in the exclusion, should be "interpreted narrowly against the insurer."[8] The Association argues the claims asserted against them by the Trust involve omissions or breach of the Association's ministerial duties. The Association points out that the property damage to the unit occurred before any action or inaction by the Association.[9] Additionally, the Association urges that "it does not dispute the Travelers' policy excludes damages caused by those [the Association's] ministerial acts"; rather it argues that the Trust's claims-for alleged acts of omission and breach of duty-are clearly covered under the policy as "Directors and Officers Wrongful Act" under subpart F and N in the definition section of the policy.
Travelers responds that the property damage exclusion encompassed the breach *1071 of duties alleged by the Trust against the Association as the allegations "are based upon, arise out of, result from, are in consequence of and involve property damage." Travelers contends that but for or without the damage caused by the fire the Trust would have no claims against the Association. Travelers urges that this Court, like other Louisiana courts, should broadly interpret the language "arising out of" contained in the property damage exclusion.
The district court, in its written reasons, cited Burmaster , 64 So.3d 312, to support its finding that the Trust's claims arose out of damage to the property and were excluded. The district court wrote in pertinent part:
This policy exclusion is similar to the exclusion in Burmaster . The policy contains a clear and unambiguous exclusion precluding coverage "for any claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving" property damage. This Court believes that [the Trust's] claims against the Association "arise out of" the property damage to the Trust's unit due to the fire.
In Burmaster , the plaintiffs filed a class action against the Plaquemines Parish Government ("PPG") public officials and their public official liability insurer for property damages caused by the "hurricane protection levees" built by the PPG when the levees failed after Hurricane Katrina. The public official liability policy excluded coverage for property damage, including "[p]hysical injury to ... tangible property, including all resulting loss of use, or resulting reduction in value of that property." Id. , 10-1543 at p. 7, 64 So.3d at 319.[10] The trial court granted summary judgment in favor of the insurer, and this Court affirmed the judgment. On appeal, plaintiffs asserted the exclusion did not include damage to "intangible property." This Court disagreed and held that the policy excluded coverage "for all intangible losses claimed by the Plaintiffs as these damages emanated from or resulted as a consequence of the injury to the Plaintiffs' tangible property (which is expressly excluded from coverage)." Id. , 10-1543 at p. 12, 64 So.3d at 321. This Court explained that "without injury to the Plaintiffs' residences, businesses, and personal belongings (tangible property) due to flooding when the levees were breached, the Plaintiffs would not have sustained any resulting stigma, inconvenience, loss of enjoyment, increased premiums and/or deductibles and/or loss of business income damages (intangible property) as they claim." Id.
The Association argues Burmaster is distinguishable from the present case because the damage in Burmaster was caused by "the negligent failure of the government officials to maintain the levee, rather than by a ministerial act of those officials." However, we find Burmaster instructional as this Court was called upon to interpret a property damage exclusion to determine if the intangible property claims, which were not expressly excluded in the policy but arose as a result of the *1072 property damage, were excluded. This Court in Laborde v. Deblanc , 587 So.2d 58 (La. App. 4th Cir. 1991) interpreted an exclusion similarly as in Burmaster . Additionally, in Laborde , the exclusion contained the "arising out of" language which is present in the exclusion in this case.
In Laborde , 587 So.2d 58, Mr. Laborde purchased a boat, "The Amanda," from the defendant, Mr. Deblanc. While Mr. Laborde, his two sons, his brother-in-law and his son, were spending the night on "The Amanda," the generator installed by Mr. Deblanc malfunctioned causing carbon monoxide fumes to leak out of the exhaust system resulting in the death of one of Mr. Laborde's sons and his brother-in-law's son, and injuries to Mr. Laborde and his other son. Mr. Laborde and others filed suit. Mr. Deblanc and State Farm, which insured the boat, were among those named as defendants. State Farm filed a third party demand against America First Insurance Company ("American First"), which insured Mr. Deblanc's home during the time of the incident. American First filed a motion for summary judgment seeking dismissal of the third-party demand, and State Farm filed a motion for summary judgment, pertinently asserting that American First provided coverage for the loss, and the American First policy was primary. The district court denied American First's motion and granted State Farm's motion; and American First appealed. On Appeal, this Court reversed the district court's judgment. One of the arguments asserted by American First was that the homeowner's policy issued to the Deblanc's excluded coverage for any watercraft. This Court agreed and opined in pertinent part:
The pertinent language in the policy reads: "personal liability coverage does not apply to bodily injury claims 'arising out of ' the ownership, maintenance, or use of any watercraft owned or rented by the insured." " 'Arising out of' implies an element of causality though not necessarily the proximate cause." Speziale v. Kohnke, 194 So.2d 485 at 488 (La.App. 4th Cir.1967), writ refused 250 La. 469, 196 So.2d 534 (La.1967).
The court in Louisiana Insurance Guaranty Association v. Gugliemo [Guglielmo], 276 So.2d 720 (La. App. 1st Cir.1973), writ refused 279 So.2d 690 (La. 1973), held that the term "arising out of" relates not to verb tense or the time that the claim arises, but rather to the source and nature of the claim....
* * *
Accordingly, this court must look to the occurrence which precipitated the damages as being dispositive. In this case, all damages arise out of Mr. Deblanc's ownership of the watercraft. Had Mr. Deblanc never owned The Amanda, he would not have had the generator installed on the watercraft, would not have sold the watercraft to the Labordes, and the Laborde's [sic] would not have a claim against him for these damages. All losses were derivative of Mr. Deblanc's ownership of The Amanda.
The policy excludes claims arising out of the ownership, the maintenance, use, loading or unloading of a watercraft; the clear intent is to exclude a much broader range of claims with the common denominator being that the activities are derivative of a boat that at some point in time was owned by the insured....
Id. at 59-60 ; See also , Chicago Prop. Interests, L.L.C. , 08-526 at pp.7-8, 8 So.3d at 47 (wherein our sister court was called upon to interpret the "arising out of" language in a property damage exclusion of a Public Officials and Employees Liability Policy and held that "every category of damages the plaintiffs allege directly or *1073 indirectly had its origin in the ... property damage" and were excluded.[11] ).
In further review, we look at illustrative cases outside of Louisiana, with similar facts as the present case, that interpreted the term "arising out of" in an analogous manner as Louisiana Courts.
In Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am. , 664 F.Supp.2d 1281, 1283 (S.D. Fla. 2009), the owner of a condominium unit sued the condominium association board (the "association") when the owner's unit was damaged. The plaintiff alleged the association failed to "adequately maintain and repair the roof and air conditioning system of the condominium building before, between and after Hurricanes Jeanne and Frances made landfall in South Florida in October, 2004." Id. at 1284. Travelers had issued to the association a "Non-Profit Management and Organization Liability Insurance Policy" which covered " 'loss ... incurred by the [Association] as the result of any claim ... made against the [Association] ... for a Wrongful Act." Id. at 1283. In the policy, "wrongful act" was defined as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured organization ...." Id. at 1283. The policy contained an exclusion very similar to the one at issue in this case: " 'for or arising out of any damage, destruction, loss of use or deterioration of any tangible property,' defined to include 'construction defects'...." Id. Travelers moved for a summary judgment on the grounds coverage of the plaintiff's claims were excluded under the policy and thus, it had no duty to defend. The federal district court granted Travelers' motion for summary judgment explaining in pertinent part:
The Florida Supreme Court has held, interpreting a policy exclusion in a CGL policy, that the phrase "arising out of" is broader in meaning than the term "caused by," and means "originating from," having its origin in, growing out of ... flowing from, "incident to or having connection with." Taurus Holdings Inc. v. United States Fidelity and Guaranty Co. , 913 So.2d 528 (Fla. 2005), citing Hagen v. Aetna Casualty & Surety Co. , 675 So.2d 963 (Fla. 5th DCA 1996). While it requires "some causal connection or relationship," it does not require proximate cause in the legal sense. See e.g. Stevens v. Fireman's Fund Ins. Co. , 375 F.3d 464 (6th Cir. 2004) (applying Florida law) ("arising out of" language requires only "but for" causation).
The policy at issue here expressly excludes coverage for claims "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property." The Bursten complaint alleges mold damage, contents damage and loss of use of Bursten's unit as a result of water infiltration caused by Hurricanes Frances and Jeanne. This claim plainly has its origin in, grows out of, flows from or originates from damage to tangible property. But for the alleged water intrusion and damage to the building skin, there would be no Bursten claim for mold, structural damage and loss of use of the Bursten unit. This meets the definition of simple "but for" causation.
Id. at 1288. See also , *1074 Parc Condo. Ass'n v. Travelers Cas. & Sur. Co. of Am., No. CV H-15-486, 2016 WL 5172513, at *3 (S.D. Tex. Mar. 31, 2016).[12]
Employing the statutory and jurisprudential rules of interpreting an insurance policy exclusion, we find the property damage exclusion, including the term "arising out of," in the Management Policy is not ambiguous. A de novo review supports the district courts' finding that the property damage exclusion excluded the Trust's claims against the Association-failure to secure adequate compensation to repair the unit; negligently repairing the unit; failure to promptly repair the unit or pay the Trust the proper amount to repair the unit; and failure to properly spend the insurance proceeds to repair the unit-as the claims were " 'arising out of, directly or indirectly ... or in any way involving' property damage." The Trust would not have suffered any alleged damages as a result of the Association's decisions but for or without the property damage caused by the fire to the unit. This claim lacks merit.
The Duty to Defend
The Association asserts the district court erred in failing to find Travelers had a duty to defend it against the Trust's claims.
First, the Association contends the district court committed reversible error when it failed to decide whether Travelers had a duty to defend, as there is no reference to the duty to defend in the district court's written reasons. We disagree. In its written reasons, the district court specifically mentioned the duty to defend, quoting Elliott v. Cont. Cas. Co., 06-1505, p. 5 (La. 2/22/07), 949 So.2d 1247, 1250 : "The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." Additionally, the district court granted Travelers' motion for summary judgment which was urged on the ground that coverage was excluded *1075 under the policy, and as a result, Travelers' had no duty to defend. This claim lacks merit.
Secondly, the Association contends Travelers owes the Association a duty to defend it against the Trust's claims because the property damage exclusion does not unambiguously exclude coverage.
" 'Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims.' " Plaia v. Stewart Enterprises, Inc. , 14-0159, p. 35 (La. App. 4 Cir. 10/26/16, 229 So.3d 480, 504 (quoting Mossy Motors, Inc. v. Cameras Am. , 04-0726, pp. 5-7 (La. App. 4 Cir. 3/2/05), 898 So.2d 602 ).[13] In Bryant v. Motwani , 96-1351, p. 8 (La. App. 4 Cir. 10/30/96), 683 So.2d 880, 884, this Court explained:
The insurer's duty to defend is determined by comparing the allegations of the plaintiff's complaint with the terms of the policy; the insurer generally has a duty to defend unless the allegations in the complaint unambiguously exclude coverage. American Home Assurance Company v. Czarniecki , 255 La. 251, 230 So.2d 253, 259 (1969). The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. See Collier v. Williams-McWilliams Co., Inc. , 459 So.2d 719, 724 (La. App. 4th Cir.1984). The plaintiff's complaint against the insured is examined with the assumption that all the allegations are true. West Brothers of DeRidder v. Morgan Roofing , 376 So.2d 345, 348 (La. App. 3d Cir.1979). Where the pleadings, taken as true, allege both coverage under the policy and liability of the insured, the insurer is obligated to defend, regardless of the outcome of the suit or the eventual determination of actual coverage. American Home at 259, 230 So.2d 253.
See also , Plaia , 14-0159, p. 35, 229 So.3d at 504 (quoting Mossy Motors, Inc. , 04-0726 at pp. 5-7, 898 So.2d at 606-07 )(where this Court explained that comparing the allegations in the petition to the terms of the policy to determine a duty to defend is referred to as the "eight-corners rule.").
The terms of the Management policy provided that Travelers "has no duty to defend any claim unless duty-to-defend coverage has been specifically provided herein [the policy]." The Management policy required Travelers to pay for "Loss for Directors and Officers Wrongful Acts" and the policy defined "Loss" to include "Defense Expenses." Turning to the petition, the Trust alleges that the Association breached its duties under La. R.S. La. R.S. 9:1123.112 and La. C.C. art. 2315. Specifically, the Trust asserts that the Association (1) failed to secure adequate compensation to repair the Trust's unit and negligently repaired the unit, (2) failed to promptly repair the unit or pay the Trust the proper amount to repair the unit; and (3) failed to properly spend the insurance proceeds to repair the unit. As discussed supra , these claims arise out of and are derivative of the property damage caused by the fire to the unit, and the property damage exclusion of the Management Policy unambiguously excludes these claims. This Court espoused in Louisiana Citizens Prop. Ins. Corp. v. Age , 12-0805, p. 4 (La. App. 4 Cir. 11/28/12), 104 So.3d 675, 677, (citing Crabtree v. Hayes-Dockside, Inc. , 612 So.2d 249, 251 (La. App. 4 Cir.1992) ), that "[i]t is settled that when an exclusion to a policy is applicable, the insurer owes no duty to defend or indemnify the insured." Thus, Travelers' owed no duty to defend, and this claim lacks merit.
*1076 "Illusory Coverage"
Lastly, the Association urges application of the property damage exclusion to the Trust's claims will result in "illusory coverage" as the Management Policy was purchased by the Association to provide coverage for its "officers and directors under situations in which they were sued for actions take[en] in the performance of their ministerial duties."
The Association points out that in Orleans Par. Sch. Bd. v. Scheyd, Inc. , 95-2653, p. 9 (La. App. 4 Cir. 4/24/96), 673 So.2d 274, 279, this Court espoused that "[i]t would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage." Travelers responds that in Orleans Parish School Bd. , supra , this Court was referring to an endorsement in the policy which negated all coverage under the policy and contends the Association failed to show how the property damage exclusion would have negated "all possibility of coverage for any claim under the Policy."
Additionally, the Association cites Doerr, noting that the Doerr Court discussed the expectations of consumers in purchasing liability insurance which included the insured expecting to be "insulated generally from liability claims." Id. , 00-0947 at p. 6, 774 So.2d at 127. In response, Travelers argues Doerr is distinguishable because the Supreme Court discussed the insured's expectation of coverage in return for payment of the premium after finding the pollution exclusion in a parish's commercial general liability policy was ambiguous; and, in this case, the exclusion is not ambiguous.
In Doerr , the Supreme Court held that when interpreting a contract, a literal reading of a contract should not lead to an absurd consequence. Id. , 00-0947 at pp. 6, 774 So.2d at 124. The Doerr court concluded a literal reading of a pollution exclusion in an insurance policy would result in an absurd consequence-excluding coverage "for all interactions with irritants or contaminants of any kind," and it would "alter the general scope and expectation of the parties." Id. , 00-0947 at pp. 12, 25, 774 So.2d at 127, 135. As a result, the Supreme Court found the pollution exclusion ambiguous. Id. , 00-0947 at p. 5, 774 So.2d at 124-25.
In the case sub judice , we find a literal reading of the property damage exclusion in the Management Policy does not lead to an absurd consequence, and it does not alter the general scope and expectation of the parties. Unlike Doerr , the property damage exclusion, in this case, does not exclude coverage for the Association's errors, omissions and breach of duty that do not arise out of property damage. As discussed supra , multiple cases have interpreted similar policy exclusions to exclude intangible property damage analogous to the claims in this case, and these courts have not found such a reading would lead to absurd consequences.[14] Moreover, insurers *1077 can limit their liability absent a conflict with statutory provisions or public policy. Pareti , 536 So.2d at 421 (citations omitted). The Association fails to show nor have we found that the exclusion is against a statutory provision or against public policy. This claim lacks merit.
Accordingly, we find Travelers carried its burden of proving the Trust's claims were excluded from coverage under the Management Policy as a matter of law, and a de novo review supports the district court's judgment dismissing the third-party demand and granting Travelers' motion for summary judgment.
Conclusion
Accordingly, the district court's judgment is affirmed.
AFFIRMED

The Trust also prayed for all attorneys' fees and court costs incurred in the case pursuant to La. R.S. 9:1121.104.

Louisiana Code of Civil Procedure Article 966 codifies the summary judgment process. Article 966 was amended and reenacted by La. Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The motions, in this case, were filed after the effective date of this Act, thus, the amended version of La. C.C.P. art. 966 applies. La. C.C.P. 966(C)(4) provides: "In all cases, the court shall state on the record or in writing the reasons for granting or denying the motion. If an appealable judgment is rendered, a party may request written reasons for judgment as provided in Article 1917."

--- So.3d at ----, 2018 WL 992322 *1.

La. C.C.P. art. 966(F) provides that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time."

The opinion was corrected on reh'g but the correction was unrelated to the text cited. See Doerr v. Mobil Oil Corp. , 00-0947 (La. 3/16/01), 782 So.2d 573.

The Association cites "Couch on Insurance, § 101:52."

The Association claims that "the Amended Petition does not allege that the Association actually caused damage ...."

The policy exclusion in Burmaster did not use the language "arising out of"; rather, it provided in pertinent part:
2. Exclusions
This insurance does not apply to:
a. Any "claim" for "bodily injury", "property damage" or "personal injury."
* * *
7. "Property damage" means:
a. Physical injury to, or criminal abstraction of, tangible property, including all resulting loss of use, or resulting reduction in value of that property; or
b. Loss of use, or reduction in value, or tangible property that is not physically injured or criminally abstracted.
Burmaster , 10-1543 at pp. 6-7, 64 So.3d at 318.

The plaintiffs' damages included "contamination of property, loss of use of property, increased living expenses, displacement costs, diminution of property value, ecological damages, loss of income, lost profits, lost business opportunity, inconvenience, mental anguish, emotional distress, bodily harm, and past and future medical expenses." Chicago Prop. Interests, L.L.C. , 08-526 at p. 4, 8 So.3d at 45.

In Parc Condo. Ass'n. , 2016 WL 5172513, at *3, a condominium owners' units were damaged during Hurricane Ike. The owner filed suit against the condominium association and its insurer. A dispute arose regarding coverage, including the duty to defend, between the association and its insurer under the association's management and liability policy. The property damage exclusion at issue stated that "the Insurer shall not be liable to make payment for Loss in connection with any Claim made against any of the Insureds: For or arising out of any damage, destruction, loss of use or deterioration of any tangible property." Id. (footnote omitted.) The parties agreed that the claims arising out of property damage caused by Hurricane Ike fell under the property damage exclusion. However, the association asserted there was coverage for the condominium owners' claims of mental anguish suffered as result of the actions of the association such as physical threats, harassment, and retaliation when the owners tried to communicate with the Association about making the repairs; failure of the Association to properly insure the units before the hurricane occurred, and the Association overcharging through its agent. The federal district court found the claims, except the claim that the Association was overcharging through its agent, were incidental to Hurricane Ike and excluded under the property damage exclusion. The court explained in pertinent part:
Under Texas law, "arise out of" "means that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." Basic Energy Servs., LP v. Great N. Ins. Co. , 347 Fed.Appx. 83, 88 (5th Cir. 2009) (citing Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co. , 141 S.W.3d 198, 203 (Tex. 2004) ). The claim must only "bear an incidental relationship to the described conduct for the exclusion to apply." Nutmeg Ins. Co. v. Clear Lake City Water Authority , 229 F.Supp.2d 668, 691 (S.D. Tex. 2002) (Harmon, J.) (citing Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation , 173 F.3d 941, 943 (5th Cir. 1999) ).
Id.

The Supreme Court denied writs in this case. Plaia , 16-2264 (La. 2/3/17), 215 So.3d 692 ; 16-2261 (La. 2/3/17), 215 So.3d 698 ; and 16-2258 (La. 2/3/17), 215 So.3d 699.

In Chicago Prop. Interests, L.L.C. v. Broussard , 08-526, p. 10, 8 So.3d at 49, discussed supra , the plaintiffs also alleged that the property damage exclusion essentially "excludes all people and all things from any coverage whatsoever." The Fifth Circuit noted "the ... policy provides coverage for a seemingly minute variety of 'Wrongful Acts' by public officials." Id. However, the court rejected plaintiffs' argument and held there was one category of damages which would arguably not be excluded such as purely economic damages. The court explained if the plaintiffs alleged that "the parish president arbitrarily and capriciously failed to reopen the parish after public services had been restored, the plaintiffs could argue that they suffered a loss of business opportunity, assuming that they suffered no property damage." Id. , 08-526 at pp. 11, 8 So.3d at 49. Additionally, the court concluded that "[i]n any event, Jefferson Parish officials are free to provide themselves with whatever insurance coverage they see fit." Id. , 08-526 at p. 11, 8 So.3d at 49.