| | | |
|---|---|---|
| **NYRESS MANNING ON BEHALF OF MINOR CHILD, COREY WILLIAMS, JR., FOR THE WRONGFUL DEATH OF DEREIAL MANNING AND FOR SURVIVAL DAMAGES** | * | **NO. 2025-CA-0384** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| **VERSUS** | | **STATE OF LOUISIANA** |
| | * | |

* * * * * * *

**RH WINDRUN, LLC, THE LYND COMPANY D/B/A LYND LIVING, XYZ SECURITY COMPANY, JOHN DOE I, JOHN DOE II, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY, GHI INSURANCE COMPANY**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-05388, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Karen K. Herman, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Eric A. Wright
Matthew J. Pertuit
WRIGHT GRAY HARRIS, LLC
201 St. Charles Ave., Suite 2710
New Orleans, Louisiana 70170

      COUNSEL FOR PLAINTIFF/APPELLANT

Paula M. Wellons
David A. Pote
TAYLOR WELLONS POLITZ & DUHE, APLC
1555 Poydras St., Suite 2000
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**FEBRUARY 5, 2026**

Nyress Manning ("Ms. Manning"), on behalf of minor child, Corey Williams, Jr., ("Corey") seeks review of the trial court's February 10, 2025 judgment granting James River Insurance Company's ("James River") motion for summary judgment. For the reasons that follow, we affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL HISTORY**

These wrongful death and survival actions arise from the shooting death of Dereial Marie Manning ("Dereial") on July 16, 2020, at approximately 3:20 A.M. at the Carmel Spring Apartments, located at 12151 I-10 Service Road, in New Orleans, Louisiana. Twenty-year-old Dereial and her minor child, Corey, were visiting her friend's apartment when two unknown assailants knocked on the apartment door and shot her multiple times. Corey witnessed his mother being shot. Unfortunately, Dereial succumbed to her gunshot injuries.

At the time of the incident, RH Windrun, LLC ("RH Windrun") owned the Carmel Spring Apartments and was insured under a Commercial General Liability policy ("the Policy") issued by James River – Policy No. 00099047-0 – with a policy

1

period from January 14, 2020, to January 14, 2021. The Policy provided $1,000,000.00 per occurrence and $2,000,000.00 general aggregate coverage limits and contained an "Assault and Battery Exclusion" Endorsement ("the Exclusion") that excluded coverage for damages "arising out of, resulting from, or in connection with" assault or battery, failure to suppress or prevent assault or battery, and failure to provide an environment safe from assault or battery, including failure to provide adequate security. The Exclusion provided a definition of "assault" that included "assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons." Further, the Exclusion defined "battery" to include "battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons."

On June 24, 2021, Ms. Manning, as Corey's grandmother and custodial guardian, filed a petition for damages against multiple defendants including RH Windrun, The Lynd Company d/b/a Lynd Living, and James River, among others. The petition alleged premises liability, negligence, and wrongful death claims arising from the defendants' failure to provide adequate security to protect tenants and guests from foreseeable criminal acts by third parties.

James River answered Ms. Manning's petition, and subsequently filed a motion for summary judgment on August 22, 2024, arguing that coverage was excluded under the Exclusion. Ms. Manning opposed the motion asserting that (1) the shooting did not constitute assault or battery as defined under Louisiana law; (2)

2

the Exclusion was ambiguous and should be construed against the insurer, and (3) James River's broad interpretation would violate Louisiana public policy and render the policy illusory.

On December 19, 2024, the trial court held a hearing on James River's motion for summary judgment. During the hearing, James River maintained that the Exclusion was "unambiguous, clear, and broad" and specifically covered "failure to provide adequate security." Conversely, Ms. Manning averred that the Exclusion only applied to "bodily injury, property damage, or personal and advertising injury" and did not mention homicide or shooting. RH Windrun, through counsel, adopted Ms. Manning's arguments in favor of coverage. At the conclusion of the hearing, the trial court granted the motion for summary judgment, dismissing all claims against James River with prejudice.

The trial court signed the judgment on February 10, 2025, and issued a notice of signing of judgment on February 13, 2025. Five days after the issuance of the notice of signing, Ms. Manning filed an expedited request for written reasons. The trial court issued written reasons for judgment on May 21, 2025, finding that as defined in the Policy, the shooting constituted both assault and battery; therefore, the Exclusion applied to preclude coverage. The trial court rejected Ms. Manning's arguments regarding the Exclusion's ambiguity and its interpretation under Louisiana law, concluding that no genuine issue of material fact existed regarding the applicability of the Exclusion.

On March 7, 2025, Ms. Manning filed a motion of appeal, which the trial court granted. This timely appeal follows.

**STANDARD OF REVIEW**

The standard of review for a trial court's decision to grant or deny a motion for summary judgment is *de novo*. *Kazen v. Red Lion Hotels Corp.*, 2021-01820, p. 2 (La. 6/29/22), 346 So.3d 267, 269 (citation omitted). "When the facts are not in dispute, summary judgment is appropriate as the appellate court need only 'look solely to the legal question presented by the motion for summary judgment.'" *Carrere Holdings, LLC v. Williamson*, 2024-0141, p. 7 (La. App. 4 Cir. 9/17/24), 400 So. 3d 241, 247 (citation omitted).

**DISCUSSION**

On appeal, Ms. Manning asserts several assignments of error; however, the dispositive issue is whether the trial court erred in granting James River's motion for summary judgment.[1]

"[Louisiana Code of Civil Procedure Article] 966(A)(3) provides that a motion for summary judgment will be granted 'if the motion, memorandum, and

---

[1] Ms. Manning asserts five assignments of error: (1) the trial court erred as a matter of law in granting James River Insurance Company's Motion for Summary Judgment by misinterpreting the Assault and Battery Exclusion in the insurance policy and failing to recognize that the shooting death of Dereial Manning did not constitute "assault" or "battery" as defined under Louisiana law; (2) the trial court erred as a matter of law in granting summary judgment despite the existence of genuine issues of material fact concerning the applicability of the Assault and Battery Exclusion and the scope of coverage under the James River Insurance Company policy; (3) the trial court erred as a matter of law in failing to construe the ambiguous Assault and Battery Exclusion against the insurer and in favor of coverage, as required under Louisiana insurance law; (4) the trial court erred as a matter of law in applying the Assault and Battery Exclusion in a manner that violates Louisiana public policy and renders the insurance policy illusory, thereby depriving the insured of meaningful coverage for premises liability claims; and (5) the trial court erred as a matter of law in failing to recognize that the broad interpretation of the Assault and Battery Exclusion advocated by James River Insurance Company would impermissibly exclude coverage for the very type of third-party criminal acts that premises liability insurance is designed to cover.

4

supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.'" *Manning v. RH Windrun, LLC*, 2023-0588, p. 7 (La. App. 4 Cir. 5/1/24), 421 So. 3d 1, 6. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action." *Id.* (citing La. C.C.P. art. 996(A)(2)). "The procedure is favored and shall be construed to accomplish these ends." *Id*.

"Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment." *Forrest as Tr. for Jack Thrash Forrest III Tr. v. Ville St. John Owners Ass'n, Inc.*, 2018-0175, p. 7 (La. App. 4 Cir. 11/7/18), 259 So.3d 1063, 1068 (quoting *Thebault v. Am. Home Assur. Co.*, 2015-0800, p. 5 (La. App. 4 Cir. 4/20/16), 195 So. 3d 113, 116). In the matter herein, James River bears the burden of establishing that Ms. Manning's claims against RH Windrun fall within the Exclusion.

### The Assault and Battery Exclusion

As there are no factual issues in dispute, the only legal question that exists is whether the Policy excluded coverage of Ms. Manning's claims against RH Windrun. The Louisiana Supreme Court has provided the following guidance regarding insurance coverage:

> Whether an insurance policy clearly and unambiguously excludes coverage is a question of law decided from the four corners of the policy. *Baack v. McIntosh*, [20]20-1054, p. 4 (La. 6/30/21), 333 So.3d 1206, 1211.
>
> An insurance policy is a contract between the parties and should be construed using the general rules for the interpretation of contracts set forth in our Civil Code. *Sims v. Mulhearn Funeral Home, Inc.*, [20]07-0054, p. 7 (La. 5/22/07), 956 So.2d 583, 590. Interpretation of an

5

insurance policy is the determination of the common intent of the parties – this analysis starts by examining the words of the policy itself. *Id*. (citing La. C.C. arts. 2045 and 2046). Words and phrases in an insurance policy must be given their generally prevailing meaning unless they are words of art or have acquired a technical meaning. *Id*., [20]07-0554, p. 8, 956 So.2d at 589 (citing La. C.C. art. 2047). When the words of an insurance policy are clear and explicit and do not lead to absurd consequences, courts must enforce the language as written. *Id*., [20]07-0054, p. 8, 956 So.2d at 589 (citing La. C.C. art. 2046). Courts lack the authority to alter the terms of an insurance policy under the guise of interpretation and should not create an ambiguity where none exists. *Id*., [20]07-0554, pp. 8-9, 956 So.2d at 589. An insurance policy is construed against an insurer and in favor of coverage only when an ambiguity remains after applying the aforementioned general rules for the interpretation of contracts. *Id*., [20]07-0054, p. 9, 956 So.2d at 590 (further observing that for strict construction to apply, an ambiguous provision must be susceptible to two or more reasonable alternative interpretations); *Edwards v. Daugherty*, [20]03-2103, p. 12 (La. 10/1/04), 883 So.2d 932, 941. The language of an insurance policy may be general without being ambiguous. *Ledbetter*, [19]95-0895, p. 6, 665 So.2d at 1170 (citing *United National Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)).

*Kazen*, 2021-01820, pp. 3-4, 346 So. 3d at 269-270. With these precepts in mind, we examine Ms. Manning's assignments of error in connection with the Policy at issue.

### 1. Does this Shooting Constitute "Assault" or "Battery" under the Policy Definitions and Louisiana Law?

Ms. Manning asserts that the shooting death of Dereial did not constitute "assault" or "battery" under the policy definitions or under Louisiana law. We disagree.

The Exclusion at issue defines "assault" to include "any threatened harmful or offensive contact between two or more persons," and "battery" to include "any actual harmful or offensive contact between two or more persons." The undisputed facts establish that Dereial was shot multiple times by two unknown assailants, resulting in her death. This shooting constitutes "actual harmful contact" within the plain meaning of the policy's definition of "battery."

6

Ms. Manning contends that the shooting did not constitute "assault" because Dereial did not have sufficient time to perceive the impending danger and experience reasonable apprehension of harm. Under Louisiana law, assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. However, the policy's definition of assault is broader than the statutory definition and includes "any threatened harmful or offensive contact." Indeed, the shooting of Dereial involved threatened harmful contact, regardless of whether she had time to apprehend the threat.

Further, Ms. Manning argues that the shooting did not constitute "battery" because there was no direct physical contact between the assailants and Dereial. According to La. R.S. 14:33, battery is defined, in part, as "the intentional use of force or violence upon the person of another." Louisiana courts have recognized that "[b]attery does not require direct bodily contact between the actor and the victim." *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 196 (5th Cir. 2002) (quoting *Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law* § 2-6(a), at 28 (1996)). "The contact may be with an inanimate object controlled or precipitated by the actor, such as the surgeon's scalpel, a bullet[,] or even a thrown hamburger." *Id.* The bullets that struck Dereial were inanimate objects controlled by the assailants, and the resulting gunshot wounds constitute harmful contact under any reasonable interpretation of the Policy's definition of battery.

7

The Louisiana Supreme Court has consistently held that assault and battery exclusions are unambiguous and apply to violent criminal acts. In *Ledbetter v. Concord General Corp.*, the Court considered an assault and battery exclusion in the context of kidnapping and rape. 1995-0809 (La. 1/6/96), 665 So. 2d 1166. The Court recognized:

> It is neither possible nor desirable for an insurance contract to enumerate the various kinds and degrees of attacks encompassed by the assault and battery exclusion. The clause need not mention rape or strangulation or mayhem, or other greater or lesser invasions of the person; all are subsumed in the broad language employed.

*Id.* at p. 6, 665 So. 2d at 1170 (quoting *United National Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)). The Court further stated that "[i]n the civil context in which the insurance contract was made, the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *Id.*

More recently, the Louisiana Supreme Court upheld an assault and battery exclusion where the policy specifically defined the exclusionary terms. In *Kazen*, the plaintiffs filed suit after their daughter was kidnapped from a motel parking lot and later found deceased. 2021-01820, pp. 1-2, 346 So.3d at 269. The insurer denied coverage pursuant to a policy exclusion which barred coverage arising out of "assault," "battery," or "physical altercation," and specifically defined those three terms. *Id.* at p. 2, 346 So.3d at 269. The Court held that the insurer had no obligation under the policy to defend or indemnify the motel, based on the "plain meaning" of the words in the policy's definition of "physical altercation." *Id.* at p. 4, 346 So.3d

at 270. The Court reached this conclusion on the logical observation that the daughter had been undisputedly taken against her will. *Id.*

Both *Ledbetter* and *Kazen* apply to the present scenario. The shooting death of Dereial undeniably falls within the broad language of the Exclusion. The Policy's definitions of "assault" and "battery" are comprehensive and unambiguous as applied to the facts of this case. Accordingly, the trial court did not err in its determination that the shooting constituted both assault and battery under the policy definitions.

### 2. Is the "Assault and Battery Exclusion" Ambiguous?

Second, Ms. Manning argues that the Exclusion is ambiguous and must be construed against the insurer in favor of coverage. Again, we disagree.

The Exclusion contained within the Policy at issue is clear and unambiguous. The Exclusion provides, in pertinent part:

> This insurance does not apply to damages or expenses due to "bodily injury" [or] "property damage" [. . . ] arising out of, resulting from, or in connection with:
>
> 1. Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever;
>
> 2. The failure to suppress or prevent assault or battery by you, any insured, or any person;
>
> 3. The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to assault or battery[.]

The Exclusion also defines "assault" and "battery" in comprehensive terms that leave no room for ambiguity. As stated in the Exclusion:

Assault includes but is not limited to, assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

Battery includes, but is not limited to, battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever.

Ms. Manning contends that the Exclusion is ambiguous because it does not specify whether the threat must be communicated to the victim or whether the victim must be aware of the threat, and because it does not clarify whether indirect contact through projectiles constitutes the required "contact between" persons. These arguments are unpersuasive. The policy language is clear and explicit. The phrase "any threatened harmful or offensive contact between two or more persons" unambiguously encompasses the shooting of Dereial, regardless of whether she was aware of the threat. Similarly, the phrase "any actual harmful or offensive contact between two or more persons" unambiguously encompasses the gunshot wounds inflicted upon Dereial, regardless of whether there was direct physical contact between the assailants and the victim.

Additionally, Ms. Manning argues that the phrases "arising out of," "resulting from," and "in connection with" are undefined and overly broad. These phrases are standard language in insurance policies and have well-established meanings. When interpreting a policy exclusion, "the phrase 'arising out of' is broader in meaning than the term 'caused by,' and means 'originating from,' having its origin in,

10

growing out of . . . flowing from, 'incident to, or having connection with.'" *Forrest as Tr. For Jack Thrash Forrest III Tr.*, 2018-0175, p. 16, 259 So. 3d at 1073 (quoting *Taurus Holdings Inc. v. United States Fidelity and Guaranty Co.*, 913 So.2d 528 (Fla. 2005)). The shooting death of Derieal clearly "arose out of," "resulted from," and was "in connection with" the assault and battery committed by the unknown assailants. Therefore, we find that the Exclusion is unambiguous and clearly applies to the facts of this case.

### 3. *Does the Exclusion Violate Public Policy or Render the Policy Illusory?*

Next, Ms. Manning asserts that the trial court's broad interpretation of the Exclusion violates Louisiana public policy and renders the insurance policy illusory. We find Ms. Manning's argument unpersuasive.

"Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Ledbetter*, 1995-0809, p. 4, 665 So. 2d at 1169 (citing *Reynolds v. Select Properties, Ltd.*, 1993-1480 (La. 4/11/94), 634 So. 2d 1180, 1183). Ms. Manning has not established that the Exclusion conflicts with any statutory provision or public policy.

It is Ms. Manning's contention that Louisiana public policy strongly favors insurance coverage and compensation for victims of violent crimes, and that the broad interpretation of the Exclusion would effectively eliminate coverage for premises liability claims arising from third-party criminal acts. However, she fails to provide support for the notion that Louisiana law or public policy prevents

11

insurers from excluding third-party criminality from premises liability policies. There is no jurisprudence that demonstrates that Louisiana law or public policy prevents insurers from excluding third-party criminality from premises liability policies.

Moreover, Ms. Manning maintains that the broad interpretation of the Exclusion would render the policy illusory by depriving the insured of meaningful coverage for premises liability claims. A policy is illusory if it fails to provide the coverage that a reasonable insured would expect based on the policy language and the premiums paid. *See Forrest as Tr. For Jack Thrash Forrest III Tr.*, 2018-0175, p. 20, 259 So. 3d at 1076 (citing *Orleans Par. Sch. Bd. v. Scheyd, Inc.*, 1995-2653, p. 9 (La. App. 4 Cir. 4/24/96), 673 So. 2d 274, 279). However, the Policy does not eliminate all coverage for RH Windrun. The Policy provides comprehensive general liability coverage for accidents, including those caused by the insured's negligence, subject to various enumerated exclusions. The "Assault and Battery Exclusion" is but one of many exclusions in the Policy. The Policy still provides coverage for numerous other types of claims, such as slip and fall accidents, other dangerous physical conditions, or scenarios caused by RH Windrun's negligence that do not involve assault or battery. The presence of one exclusion does not render the entire Policy illusory.

The Policy provided $1,000,000.00 per occurrence and $2,000,000.00 aggregate coverage limits, with an annual premium of $408,461.00. Ms. Manning avers that this substantial premium indicates that RH Windrun expected coverage

for premises liability claims, including those arising from third-party criminal acts. However, the premium reflects the overall coverage provided by the policy, not coverage for any particular type of claim. The fact that RH Windrun paid a substantial premium does not establish that the policy was intended to cover claims arising from assault and battery, which are specifically excluded by clear and unambiguous language. Consequently, we find that the Exclusion does not violate Louisiana public policy and does not render the policy illusory.

### 4. Are there Genuine Issues of Material Fact Precluding Summary Judgment?

Last, Ms. Manning argues that genuine issues of material fact exist regarding the applicability of the Exclusion and the scope of coverage under the Policy. This argument is without merit.

James River established that the Exclusion unambiguously excludes coverage for damages arising out of the shooting death of Dereial. The undisputed facts establish that Dereial was shot and killed by unknown assailants, which constitutes assault and battery under the policy definitions. The Exclusion also specifically covers "failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security," which encompasses Ms. Manning's claims against RH Windrun for negligent failure to provide adequate security.

Ms. Manning asserts that material facts remain in dispute regarding RH Windrun's knowledge of prior criminal activity, the foreseeability of violent crime, and the adequacy of security measures. However, these factual disputes are

irrelevant to the question of whether the Exclusion applies. The Exclusion applies regardless of whether RH Windrun knew of prior criminal activity, whether the violent crime was foreseeable, or whether the security measures were adequate. The Exclusion specifically covers "failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security," and it applies "whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever."

Additionally, Ms. Manning contends that the policy language creates ambiguities that require factual development. However, as discussed above, the policy language is clear and unambiguous. The fact that the Exclusion may be broad does not make it ambiguous. The broad language of the Exclusion does not create genuine issues of material fact that preclude summary judgment. Accordingly, we find that no genuine issues of material fact exist regarding the applicability of the Exclusion.

## DECREE

For the foregoing reasons, we affirm the trial court's February 10, 2025 judgment granting James River's motion for summary judgment.

**AFFIRMED**